H. Paul KELLEY, and George S. Harrington, as officers and Members of Western Suburb Association, Plaintiffs,

v.

The MAYOR AND COUNCIL OF the CITY OF DOVER et al., Defendants.

Court of Chancery of Delaware, Kent County.

Dec. 4, 1973.

See also Del.Ch., 300 A.2d 31.

---

Roy S. Shiels, Brown, Shiels & Barros, Dover, for plaintiffs.

Nicholas H. Rodriguez, Schmittinger & Rodriguez, Dover, for defendants.

1. 30 Del.C. § 5402(a) provides in part:
   "Every person who . . . presents for recording any document . . . shall be subject to pay for and in respect to the transaction or any part thereof, a realty transfer tax at the rate of 2 percent of the value of the property represented by such document . . ."

2. The Dover City Charter makes the following provision for an annexation election:
   "Every person who is duly registered upon the Books of Registered Voters for said Election District, or Districts, who is a resident of the territory proposed to be included within the limits of The City of Dover, and who does not own real estate within said territory shall be entitled to one vote at the election to determine whether said territory shall be annexed, and every

OPINION AND ORDER ON PLAINTIFFS' APPLICATION FOR PERMANENT INJUNCTION; APPLICATION GRANTED

QUILLEN, Chancellor:

This action involves an attempt by plaintiffs to prevent annexation of certain land in Kent County by the City of Dover. Through this annexation, the City intends to extend its present western boundaries to include property owned by plaintiffs, corporate defendant Dover Country Club Apartments, Inc. (hereinafter Dover Apartments), and other persons.

On August 20, 1973, the plaintiffs asked this Court to enjoin the special annexation election set for August 23. This request for injunctive relief was based on statutory and constitutional grounds. First, plaintiffs contended that, since the Delaware Realty Transfer Tax[1] was not paid in a transfer vesting property in the name of the Dover Apartments, the transfer was void and the corporation had no right to vote in the special annexation election. Second, on the basis of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, plaintiffs attacked the constitutionality of weighted voting in annexation elections as called for by the Dover City Charter[2] and 22 Del.C. § 101.[3]

corporation, firm or partnership and every person of the age of eighteen years or upwards, who is the owner of real estate within a territory proposed to be included assessed to it or him on the assessment records of Kent County shall be entitled to one vote for each One Hundred Dollars ($100.00) or fractional part thereof of the assessed value of said real estate."

3. 22 Del.C. § 101 makes the following provision for annexation and incorporation elections:
   "The General Assembly shall not enact any law extending the limits of any city or incorporated town in this State so as to include any portion of the adjoining or adjacent territory until after the question of such inclusion shall have first been submitted at a special election to the qualified

Rather than provide for argument on a moot issue, the Court refused to enjoin the election, which was held as scheduled on August 23.[4] However, it was agreed that all procedures necessary to complete annexation would not be taken pending a decision on the merits of plaintiffs' challenges to the election. This is the Court's decision after a factual stipulation, briefing and oral argument, which taken together in effect constituted cross motions for summary judgment.

## I.

### THE REALTY TRANSFER TAX QUESTION

In light of the conclusions reached, *infra*, on the constitutional question presented by this case, the Court need not finally decide nor consider in any depth plaintiffs' argument that nonpayment of the Realty Transfer Tax precludes a transferee from voting in an annexation election. The Court will hire only note that the Realty Transfer Tax Statute, at 30 Del.C. § 5410(b) specifies sanctions for violations: "Whoever violates any of the provisions of this section shall be fined not more than $500 and imprisoned for not more than 1 year or both." It is doubtful that the Legislature intended to add disenfranchisement

to sanctions specifically established for failure to pay the Realty Transfer Tax. Since the Kent County Recorder of Deeds was evidently made a party because of the Transfer Tax question, the action should be dismissed as to him.

## II.

### THE EQUAL PROTECTION QUESTION

Turning to the serious Constitutional question raised by plaintiffs' suit, the Court first observes that the Fourteenth Amendment declares that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." In a long procession of decisions over the past decade the United States Supreme Court has applied the mandate of the Equal Protection Clause to many forms of state and local electoral procedures. Here, these plaintiffs ask this Court to apply that mandate to an annexation election in Delaware. Therefore, the Court will first look to the Equal Protection principles established by the United States Supreme Court for the standards to be applied here. Then, the Court will turn its attention specifically to the annexation question and to this case.

---

voters and real estate owners of the territory proposed to be annexed and included in the limits of the city or incorporated town. At such election, if the majority of the qualified voters and real estate owners in such territory shall vote approval to be included within the limits of the city or incorporated town, then and only then shall such territory be included within the limits of the city or incorporated town. Such special election shall be held by the proper election officers of the district or districts embracing the territory. Each real estate owner shall be entitled to one vote for each $100 of real estate assessed to him on the assessment records of the county in which the territory is embraced. Each qualified voter, not being the owner of real estate within the territory, shall be entitled to one vote."

4. The parties have stipulated to the following election results:

1. Of the 116 persons voting in the subject annexation election 27 voted for annexation and 89 voted against.

2. That Mr. Teel, claiming to be a vice president of Dover Country Club Apartments, as well as several other corporate subsidiaries of Robino-Ladd Corporation, voted 12,985 votes for that corporate subsidiary, together with 661 votes for the other corporate subsidiaries casting a total vote favorable to annexation of 13,646 votes.

3. That the weighted vote formula of 1 vote for each $100 of assessed valuation, plus one vote for non-property owners, resulted in a vote count of 15,373 votes in favor of annexation and 9,608 against annexation.

## A.

## REVIEW OF UNITED STATES SUPREME COURT CASES

In Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the Supreme Court held that, despite political question aspects, a voter's Fourteenth Amendment challenge to a Tennessee apportionment statute presented a justiciable issue. Subsequently, in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), the Supreme Court ruled that the Equal Protection Clause guarantees that votes for state legislators shall not be wrongfully debased or diluted.

Writing for the majority in *Reynolds*, Mr. Chief Justice Warren first observed that "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." 377 U.S. at 554, 84 S. Ct. at 1377. Then looking at the history of the franchise, he found that "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." 377 U.S. at 555, 84 S.Ct. at 1378. The right to vote was called "of the essence of a democratic society". 377 U.S. at 555, 84 S.Ct. at 1378. Consequently, in light of the important personal right involved, it was concluded that "any alleged infringement of the right of citizens to vote must be *carefully and meticulously scrutinized.*" (Emphasis supplied) 377 U.S. at 562, 84 S.Ct. at 1381. The Court, thus, refused to grant

the apportionment statute the usual presumption of validity given legislative distinctions in equal protection cases [5] and set forth what is now known as the "one person, one vote" principle; "[t]he right of a citizen to equal representation and to have his vote weighted equally with those of all other citizens . . ." 377 U.S. at 576, 84 S.Ct. at 1389.

This "one person, one vote" principle has since been extended to the local as well as the state level of government.

For example, in Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), the Supreme Court ruled that the Equal Protection Clause applied to the County Commissioners Court, a unit of local government which exercised general governmental powers over Midland County's entire geographic area. "We hold that petitioner as a resident of Midland County, has a right to a vote for the Commissioners Court of substantially equal weight to the vote of every other resident." 390 U. S. at 476, 88 S.Ct. at 1116.

Similarly, in Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), a New York statute limiting the franchise in school board elections to owners and lessees of real property and parents of school-age children was struck down as violative of the Equal Protection Clause of the Fourteenth Amendment. Once again, the voting provisions in question were closely scrutinized.[6] Besides demonstrating a ra-

---

5. The standard to be applied in equal protection cases when neither fundamental rights nor suspect classifications are involved is explained in McDonald v. Board of Election, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). It should be noted that in Delaware statutes are presumed to be Constitutional under Delaware decisions. Downs v. Jacobs, Del.Supr., 272 A.2d 706 (1970); Collison v. State ex rel. Green, 9 W.W.Harr. 460, 2 A.2d 97 (Sup.Ct.1938). It is doubtful that, left to independent judgment, our Judiciary would retreat from the presumption. It is perhaps regrettable that the Fed-

eral cases placed so much emphasis on this procedural retreat since the facts would probably overcome the presumption in cases where statutes have been held unconstitutional. Certainly the existence of the presumption would not change the result in this case.

6. At one point in his decision for the majority, Mr. Chief Justice Warren explained that:

"when we are reviewing statutes which deny some residents the right to vote, the general presumption of constitutionality afforded state statutes and the traditional ap-

tional basis for the exclusions involved, the State was made to bear the burden of proving that those exclusions were "necessary to promote° a compelling state interest." 395 U.S. at 630, 89 S.Ct. at 1891.

In Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) and Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), the states again failed to show that the exclusion of otherwise qualified voters was necessary to promote a compelling state interest. Both cases involved bond elections. In neither case could the state law excluding nonproperty owners from voting be satisfactorily justified. At one point, Mr. Justice White, speaking for the majority in *Phoenix* explained:

"The differences between the interests of property owners and the interests of nonproperty owners are not sufficiently substantial to justify excluding the latter from the franchise. . . . Presumptively, when all citizens are affected in important ways by a governmental decision subject to a referendum, the Constitution does not permit weighted voting or the exclusion of otherwise qualified citizens from the franchise." 399 U.S. at 209, 90 S.Ct. at 1994.

Holding that "the guarantee of equal voting strength for each voter applies in all elections of governmental officials," the Supreme Court has also applied the "one person, one vote" rule to school district elections in Missouri. Hadley v. Junior College District, 397 U.S. 50, 58, 90 S.Ct. 791, 796, 25 L.Ed.2d 45 (1970). And, in a memorandum decision, Parish School Board of Parish of St. Charles v. Stewart, 400 U.S. 884, 91 S.Ct. 136, 27 L.Ed.2d 129 (1970), it affirmed a three judge federal court decision that a Louisiana statute which limited the franchise in school bond elections to landowners, and allocated votes on the basis of assessed value was unconstitutional. Stewart v. Parish School Bd.

of Parish of St. Charles, 310 F.Supp. 1172 (E.D.La.1970).

Notwithstanding its clear inclination to foster equal protection for the voter, it must, be acknowledged here that the Supreme Court has not completely swept all voting restrictions from the state codes. In Gordon v. Lance, 403 U.S. 1, 5, 91 S.Ct. 1889, 1891, 29 L.Ed.2d 273 (1971), while expressly reaffirming the *Cipriano* principle "that an individual may not be denied access to the ballot because of some extraneous condition," the Supreme Court upheld a West Virginia requirement of a 60 percent majority for approval of school bond issues. "We conclude that so long as such provisions do not discriminate against or authorize discrimination against any identifiable class they do not violate the Equal Protection Clause." 403 U.S. at 7, 91 S.Ct. at 1892.

Most recently, in Salyer Land Co. v. Tulare Water District, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973), and Associated Enterprises v. Toltec District, 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973), the Supreme Court carved out an exception to the general equal protection policy against weighted voting. In upholding a California Water Code provision which permitted only landowners to vote in district elections ' and apportioned votes according to the assessed valuation of the land, Mr. Justice Rehnquist, writing for a six member majority in *Salyer*, noted that the Court was presented with the issue expressly reserved in *Avery*, supra:

" 'Were the [county's governing body] a special-purpose unit of government assigned the performance of functions affecting definable groups of constituents more than other constituents, we would have to confront the question whether such a body may be apportioned in ways which give greater influence to the citizens most affected by the organization's functions.' 390 U.S., at 483–484, 88 S. Ct. [1114], at 1120 [20 L.Ed.2d 45]."

proval given state classifications if the Court can conceive of a 'rational basis' for

the distinctions made are not applicable." 395 U.S. at 627, 628, 89 S.Ct. at 1890.

410 U.S. at 720, 93 S.Ct. at 1226, 35 L.Ed. 2d at 662. After detailing the operations of the Water Storage District and the circumstances of the election in question,[7] Mr. Justice Rehnquist reached the following conclusion:

"Not only does the district not exercise what might be thought of as 'normal governmental' authority, but its actions disproportionately affect landowners. All of the costs of district projects are assessed against land by assessors in proportion to the benefits received. Likewise, charges for services rendered are collectible from persons receiving their benefit in proportion to the services. When such persons are delinquent in payment, just as in the case of delinquency in payments of assessments, such charges become a lien on the land. Calif. Water Code §§ 47183, 46280. In short, there is no way that the economic burdens of district operations can fall on residents qua residents, and the operations of the districts primarily affect the land within their boundaries." 410 U.S. at 729, 93 S.Ct. at 1230, 35 L.Ed.2d at 667.

The reasoning and conclusion of the Court in *Salyer,* "that the popular election requirements enunciated by *Reynolds, supra,* and succeeding cases are inapplicable to elections such as the general election of appellee Water Storage District", 410 U.S. at 730, 93 S.Ct. at 1231, 35 L.Ed.2d at 667, provided the basis for the Court's per curiam decision in *Associated Enterprises, supra.* "Like the California water storage district, the Wyoming watershed district is a governmental unit of special or limited purpose whose activities have a disproportionate effect on landowners within the district." 410 U.S. at 744, 93 S.Ct. at 1237, 35 L.Ed.2d at 677.

## B.

## THE CURTIS INCORPORATION CASE IN CALIFORNIA

Unfortunately, the litany of federal equal protection cases discussed above does not include an annexation election, such as the Court must consider here. Plaintiffs have, however, brought to the Court's attention Curtis v. Board of Supervisors of Los Angeles County, 7 Cal.3d 942, 104 Cal.Rptr. 297, 501 P.2d 537 (1972), in which the California Supreme Court held that state's electoral procedure for incorporation of cities to be violative of the Equal Protection Clause. After a careful analysis of many federal and state decisions, as well as a close look at the facts of the particular case, the Court in *Curtis* determined at 104 Cal.Rptr. at 310, at 501 P.2d at 550 that:

"[N]o compelling state interest requires that nonlandowners be excluded from the group empowered to decide whether an election to incorporate a city be called, and no compelling interest is served by allocating power within that group on the basis of assessed value of land."

Although the California Supreme Court did not have the benefit of *Salyer, supra,* and *Associated Enterprises, supra,* at the time it decided *Curtis,* it is highly doubtful that those two decisions would have altered its conclusions. Moreover, the principles set forth in the concluding section of *Curtis* offer apt guidance for the decision which must be rendered here.

"The philosophic reach of the decisions of the United States Supreme Court has been to afford to each individual citizen a maximum democratic participation in political matters upon an equal basis. The decisions have intimated that special

---

7. "In determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the in-

terests of those who are disadvantaged by the classification." Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968).

voting rights, premised upon such criteria as land ownership, may be afforded, if at all, only to those who have been able to demonstrate a special and unique interest that justifies such extraordinary status. To meet the standards of the equal protection of the laws a statute so classifying voters must rest upon a compelling state interest and must be necessary to further any such interest. In the instant case the interest of the property owners is not so unique that such owners acquire some special status; their interest merges with the interests of the citizens as a whole.

"The ideal of maximum participation in democratic decision-making particularly applies to participation in the affairs of the city. One of the most striking and encouraging phenomena of our times has been the deep and renewed interest of citizens in local community matters. *To frustrate the endeavor of individuals to fix the unit of their local governance and to repose that power in land, not people, would be to stifle that self-determination.*" (Emphasis supplied)

104 Cal.Rptr. at 313, 501 P.2d at 553, 554.

## C.

### THE CASE AT BAR

■ Turning now to the case at bar, the City of Dover, relying on Gordon v. Lance, *supra,* first argues that the weighted voting scheme called for by its City Charter and 22 Del.C. § 101 does not create a "suspect" classification and, therefore, should not receive the "meticulous scrutiny" applied in *Reynolds, Kramer,* and other decisions, *supra.* The Court cannot accept such an argument. The weighted voting scheme in question blatantly creates a suspect classification containing small landowners and resident nonproperty owners. It is pure sophistry to tell the Court that a voting scheme whereby one person can cast 13,646 votes and another qualified voter only one is not "suspect".[8] In the context of such an imbalance, the fact that no resident is totally denied the franchise is insignificant. Reynolds v. Sims, *supra,* 377 U.S. at 555, 84 S.Ct. 1362. It is the City's burden to demonstrate to the Court's satisfaction that the weighted voting scheme in question rests upon a compelling state interest and is necessary to further that interest. Kramer v. Union Free School District, *supra,* 395 U.S. 631, 632, 89 S.Ct. 1886, 23 L.Ed.2d 583; Curtis v. Board of Supervisors of Los Angeles County, *supra,* 104 Cal.Rptr. at 313, 501 P. 2d at 553.

■ The only rationale the City offers to justify its weighted voting scheme is financial. The City claims that the "only financial burden of being annexed in the City is the payment of City taxes." (Defendants' Answering Brief at page 11). While it is true that a real property tax is levied based upon the assessed value of the real property,[9] such justification has only been accepted in the narrowly limited circumstances found in *Salyer* and *Associated Enterprises.*

We are not dealing here with a specialized governmental agency, whose "primary

---

8. "By gearing the weight of each elector's vote to the amount of his assessed property the laws debase the vote of small landowners. We hold therefore that the exclusion of all non-property taxpayers and the dilution of the small property holder's vote violate the Equal Protection Clause of the Fourteenth Amendment." Stewart v. Parish School Bd. of Parish of St. Charles, *supra,* 310 F.Supp. at 1173, aff'd, 400 U.S. 884, 91 S.Ct. 136, 27 L.Ed.2d 129.

9. It must not go unnoticed that the City also levies upon all its residents, eighteen years of age or over, a capitation tax of $3.20 per person whether or not they own real property. That $3.20 sum may not, of itself, be a heavy burden. But there is no guarantee it will not one day be increased to a much more significant figure. In voting whether or not to become subject to such a tax, each voter is entitled to have his vote counted equally. Cipriano v. City of Houma, *supra*; Phoenix v. Kolodziejski, *supra.*

purpose, indeed the reason for its existence, is to provide for the acquisition, storage, and distribution of water for farming" in a selected geographical area. 410 U.S. at 728, 93 S.Ct. at 1230, 35 L.Ed. 2d at 666. Rather, we are dealing with a municipality, a local governmental unit which exercises general governmental power. In *Salyer,* 410 U.S. at 728, 93 S.Ct. at 1230, 35 L.Ed.2d at 666, 667, Mr. Justice Rehnquist, was careful to distinguish the water storage district from such a body:

> "It [the Tulare Water District] provides no other general public services such as schools, housing, transportation, utilities, roads or anything else of the type ordinarily financed by a municipal body. . . . There are no towns, shops, hospitals or other facilities designed to improve the quality of life within the district boundaries and it does not have a fire department, police, buses, or trains."

The City of Dover provides many of the services listed in *Salyer*; so does Kent County. The petitioners have a right to an undiluted vote in choosing which governmental unit will provide them such services. The annexation election here in question falls within the scope of the principles set forth in *Avery* and *Curtis*. It is not the specialized election of a narrowly specialized unit as found in *Salyer* and *Associated Enterprises.*

Moreover, although annexation of real property into the City's boundaries probably means a heavier tax burden for wealthy property owners, the Court is not convinced that others will not as greatly be affected by annexation. In the first place, it may be more difficult for a person of modest means to pay his tax or his rent than a wealthy landowner. Moreover, there are other factors to be weighed than financial burden.

Can it be said that an average citizen has less interest in determining his local

government officials than a corporate landowner? Can it be said that the interest of a private citizen in the services of local government is not as great as that of a corporate owner of an apartment complex?[10] We are in effect talking about a limited form of citizenship where, by any sense of free government, people and not dollars have to be determinative. This case involves "the essence of a democratic society" and not a special situation of weighted interests.

The Court will not further lengthen this opinion with additional comparisons. Neither does the Court intend, in any way, to denigrate the quality of life in Dover as compared with Kent County. Nevertheless, if an annexation election is to be held, each qualified voter within the area to be annexed, has the right to make such a comparison, to decide whether he wants his home within the boundaries of the City, and to have his vote weigh equally with that of every other voter.

■ The City of Dover has failed to show that any compelling state interest is served by the weighted voting provisions of its City Charter and 22 Del.C. § 101. The Court holds that the Equal Protection Clause of the Fourteenth Amendment renders such weighted voting unconstitutional in the context of annexation elections. Thus the annexation election of August 23, 1973, which was challenged by this suit, must be declared void and of no effect.

### D.

### DICTUM ON RETROACTIVITY

Since other annexations throughout the State of Delaware have evidently taken place prior to this opinion, a brief word about the question of retroactivity would seem appropriate. The Court, by its action today, has no intention of suggesting those

---

10. See Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970) in which the Supreme Court overruled a decision of Maryland election officials denying the franchise to residents of a federal installation because they paid no state property taxes.

earlier annexations are void. To do so would place an inequitable burden on all concerned.

Rather, this Court, if called upon to rule, intends to be guided by the following policy of the United States Supreme Court, in *Cipriano, supra,* 395 U.S. at 706, 89 S.Ct. at 1900:

"Significant hardships would be imposed on cities, bondholders, and others connected with municipal utilities if our decision today were given full retroactive effect. Where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

■ Hence, while the Dover City Charter and 22 Del.C. § 101 are unconstitutional in that they call for weighted voting in annexation elections, and the election of August 23, 1973 is void for that reason, no prior annexations in the State are affected by this decision.

## III.

### ORDER

In accordance with the above opinion, the following five paragraph order is hereby entered:

1. Insofar as this action is against Joseph Rawlins, Kent County Recorder of Deeds, it is dismissed.

2. Judgment is entered in favor of the plaintiffs against all other defendants.

3. The election of August 23, 1973, which is the subject of this litigation, is void because weighted voting permitted by law violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

4. The Mayor and Council of the City of Dover and the City Clerk of the City of Dover are permanently enjoined from taking any administrative, legislative or executive action as a result of the special election of August 23, 1973, seeking to annex land involved in this litigation to the City of Dover.

5. The land involved in this litigation sought to be annexed by the special election of August 23, 1973 is hereby declared to be without the bounds of the City of Dover.