### The MAYOR AND COUNCIL OF the CITY OF DOVER et al., Defendants Below, Appellants,

v.

### H. Paul KELLEY and George S. Harrington, as officers and members of Western Suburb Association, Plaintiffs Below, Appellees.

Supreme Court of Delaware.

Argued Sept. 13, 1974.

Decided Oct. 9, 1974.

---

See also Del.Ch., 300 A.2d 31.

Nicholas H. Rodriguez, of Schmittinger & Rodriguez, Dover, for defendants below, appellants.

Roy S. Shiels, of Brown, Shiels & Barros, Dover, for plaintiffs below, appellees.

Before HERRMANN, Chief Justice, and TAYLOR and WALSH, Judges.

HERRMANN, Chief Justice:

This appeal brings up for decision the question of whether the weighted voting provisions of 22 Del.C. § 101[1] and of the Dover City Charter,[2] pertaining to special

---

I. 22 Del.C. § 101 provides in pertinent part:
"§ 101. Extension of city or town limits; special election; voting rights
"The General Assembly shall not enact any law extending the limits of any city or incorporated town in this State so as to include any portion of the adjoining or adjacent territory until after the question of such inclusion shall have first been submitted at a special election to the qualified voters and real estate owners of the territory proposed to be annexed and included in the limits of the city or incorporated town. At such election, if the majority of the qualified voters and real estate owners in such territory shall vote approval to be included within the limits of the city or incorporated town, then and only then shall such territory be included within the limits of the city or incorporated town. Such special election shall be held by the proper election officers of the district or districts embracing the territory. Each real estate owner shall be entitled to one vote for each $100 of real estate assessed to him on the assessment records of the county in which the territory is embraced. Each qualified voter, not being the owner of real estate within the territory, shall be entitled to one vote. * * *."

2. The Dover City Charter makes the following provision for an annexation election:
"Every person who is duly registered upon the Books of Registered Voters for said Election District, or Districts, who is a resident of the territory proposed to be included within the limits of The City of Dover, and who does not own real estate within said territory shall be entitled to one vote at the election to deter-

elections for annexations of land, violate the Equal Protection Clause of the Fourteenth Amendment.

Plaintiffs, landowners within an area sought to be annexed by the City of Dover, obtained an order of the Court of Chancery voiding the special annexation election held by the City on August 23, 1973 and enjoining City officials from proceeding with the annexation of the land as a result of that election. The Court of Chancery held that the weighted voting provisions here involved violate the Equal Protection Clause. See 314 A.2d 208. The defendants, Mayor and Council of the City of Dover and others, appeal. They contend that the Court of Chancery erred in its interpretation and application of United States Supreme Court cases dealing with voting rights.

Specifically stated, the question before us is this: Is it constitutional to weight votes in an annexation election according to the assessed value of the real estate owned by each eligible voter? We agree with the Court of Chancery that the Equal Protection Clause prohibits such weighted voting, absent a showing that it is "necessary to promote a compelling state interest".

I.

■ In determining the validity of a statutory discrimination or classification in an equal protection case, this Court has recognized two separate standards for testing constitutionality prescribed by the Supreme Court of the United States. See Husband M. v. Wife M., Del.Supr., 321 A. 2d 115 (1974). If a case involves "suspect classifications",[3] or touches upon "fundamental interests",[4] legislative discrimina-

tions are subjected to a "strict scrutiny", barring the application of the usual presumption of constitutionality and requiring the showing of a "compelling state interest" which necessitates the law. However, in an equal protection case in which neither fundamental rights nor suspect classifications are involved, the traditional equal protection "rationality" standard is applied, permitting the ordinary presumption of constitutionality. Justice v. Gatchell, Del. Supr., 325 A.2d 97 (1974).

■ The general rule is that the "strict scrutiny" standard applies to classifications involving voting rights; that the ordinary presumption of constitutionality inherent in the "traditional approach" does not apply thereto. State laws which selectively distribute the franchise, or require differential treatment of those exercising their right to vote, must be "carefully and meticulously scrutinized", Reynolds v. Sims, 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964); and, in order to pass this constitutional test, such meticulous scrutiny must disclose that the infringement of the right to vote is "necessary to promote a compelling state interest". Kramer v. Union Free School District No. 15, 395 U.S. 621, 627, 89 S.Ct. 1886, 1890, 23 L.Ed.2d 583 (1969); see also Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970).

The defendants contend that the normal presumption of constitutionality should be observed, and that the "strict scrutiny" standard, applied in *Reynolds, Kramer, Cipriano* and *Phoenix,* is not applicable in this case. Their argument, in support of the contention that the traditional equal

---

mine whether said territory shall be annexed, and every corporation, firm or partnership and every person of the age of eighteen years or upwards, who is the owner of real estate within a territory proposed to be included assessed to it or him on the assessment records of Kent County shall be entitled to one vote for each One Hundred Dollars ($100.00) or fractional

part thereof of the assessed value of said real estate."

3. In this category fall the cases cited in Husband M. v. Wife M., Del.Supr., 321 A.2d at 118.

4. See, e. g., Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

protection "rationality" standard should be applied, is threefold: First, that *Reynolds* and its "one man, one vote" principle applies only to general elections and not to a special purpose annexation election. Second, that since the Statute and City Charter in question do not absolutely withhold the franchise, as did the Statutes examined in *Kramer, Cipriano* and *Phoenix*, the more lenient equal protection standard should be applied. Third, that the "rationality" test should be applied because there is no indication in this case of an "independently identifiable group [being] 'fenced out' from the franchise because of the way they vote." Gordon v. Lance, 403 U.S. 1, 5, 91 S.Ct. 1889, 1892, 29 L.Ed.2d 273 (1971).

The defendants' arguments are unpersuasive. We deal with them seriatim:

■ In considering the application of the "one man, one vote" principle to residents of units of local governments exercising general governmental power, as that term is defined in Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), the subject or purpose of the election is without constitutional significance. As was stated in *Kramer,* "Our exacting examination is not necessitated by the subject of the election; rather, it is required because some resident citizens are permitted to participate and some are not" (395 U.S. at 629, 89 S.Ct. at 1891). Also, in Hadley v. Junior College District, 397 U.S. 50, 54, 90 S.Ct. 791, 794, 25 L.Ed.2d 45 (1970), the Court held: "When a court is asked to decide whether a State is required by the Constitution to give each qualified voter the same power in an election open to all, there is no discernible, valid reason why constitutional distinctions should be drawn on the basis of the purpose of the election."

■ Total denial of the franchise is not a prerequisite for the application of the "strict scrutiny" standard. The decisions of the United States Supreme Court in this area do not hold that states may restrict or infringe upon the voting rights of residents of units of local governments exercising general governmental powers, upon a mere showing of a rational relationship to a valid state interest, as long as they do not wholly withhold the franchise. State laws denying or diluting the right to vote in cases such as this are tested by the same strict standard. In Williams v. Rhodes, 393 U.S. 23, 31, 89 S.Ct. 5, 11, 21 L.Ed.2d 24 (1968), discussing state laws which imposed "burdens" on the right to vote, the Court stated: " * * * the decisions of this Court have consistently held that 'only a compelling state interest * * *'" could justify them. More recently, in applying the "strict scrutiny" standard in *Phoenix,* the Court stated:

> "Presumptively, when all citizens are affected in important ways by a governmental decision subject to a referendum, the Constitution does not permit weighted voting or the exclusion of otherwise qualified citizens from the franchise." 399 U.S. at 209, 90 S.Ct. at 1994.

Although subject to qualification,[5] the general principle remains: " * * * any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds,* 377 U.S. at 562, 84 S.Ct. at 1381.

Defendants' reliance on Gordon v. Lance, 403 U.S. 1, 91 S.Ct. 1889, 29 L.Ed. 2d 273 (1971) is misplaced. *Gordon,* which upheld the requirement of a 60% majority for approval of bond issues, must be considered a retreat from the concept of supremacy of the majority. However, the case presented no question of classification by group characteristics or allocation of individual voting power in proportion to

5. See Salyer Land Company v. Tulare Lake Basin Water Storage District, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973), and Associated Enterprises, Inc. v. Toltec Water-shed Improvement District, 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973), discussed below.

property ownership or the lack thereof. The first footnote in *Gordon* is particularly pertinent to this appeal. The Court there noted that "While *Cipriano* involved a denial of the vote, a percentage reduction of an individual's voting power in proportion to the amount of property he owned would be similarly [unconstitutional]". 403 U.S. at 4, 91 S.Ct. at 1891.

We conclude that a statute or city charter which allocates power to voters in an annexation election in proportion to the assessed value of the real estate owned by each voter, and which initially allocates one vote for otherwise qualified voters who do not own real estate, is an infringement or burden upon the right to vote[6] which must be examined under the more strict equal protection standard. We hold that, to withstand that constitutional test, the weighted voting provisions in question must be based upon a compelling state interest and must be necessary to promote that interest, or must be stricken down. See Curtis v. Board of Supervisors of Los Angeles County, 7 Cal.3d 942, 104 Cal. Rptr. 297, 501 P.2d 537 (1972).

## II.

The defendants also contend that this case should be controlled by the recent decisions of the United States Supreme Court in Salyer Land Company v. Tulare Lake Basin Water Storage District, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973) and Associated Enterprises, Inc. v. Toltec Watershed Improvement District, 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973). In *Salyer*, the Court upheld provisions of the California Water Code permitting only landowners to vote in water storage district elections and apportioning votes according to the assessed value of the land held. In *Associated Enterprises*, upon the basis of *Salyer*, the Court upheld

similar provisions in the Wyoming Watershed Improvement District Act.

These two cases announce an exception to the general rule of "one man, one vote" laid down in *Reynolds*. The primary basis for the exception is the nature of the unit of government affected by the voting provisions. The Supreme Court held that the popular election requirements enunciated by *Reynolds* were not applicable to elections in a water storage district "by reason of its special limited purpose and of the disproportionate effect of its activities on landowners as a group * * *." *Salyer Land Company*, 410 U.S. at 728, 93 S.Ct. at 1229.

A city or incorporated town is not a governmental unit of special or limited purpose. For that reason, *Salyer* and *Associated Enterprises* are inapposite here; the exception to the "one man, one vote" rule enunciated by them is of no benefit to the City of Dover. We do not reach questions concerning the economic effect of annexation, or whether annexation affects definable groups of citizens differently. We hold only that the rule of *Salyer* and *Associated Enterprises* does not extend to a unit of general local government such as is involved here.

## III.

The determinative question, therefore, is whether the defendants have shown a "compelling state interest" which necessitates the weighted voting provisions in question.

In their brief, the defendants did not attempt to show a compelling state interest. However, in response to questioning at oral argument, the contention was made on behalf of the defendants that the compelling state interest, necessitating the weighted voting provisions, is the encouragement

---

6. "By gearing the weight of each elector's vote to the amount of his assessed property the laws debase the vote of small landowners." Stewart v. Parish School Board of the Parish of St. Charles (E.D.La.) 310 F.Supp. 1172, 1173, aff'd 400 U.S. 884, 91 S.Ct. 136, 27 L. Ed.2d 129 (1970).

of the growth of cities or incorporated towns in Delaware.

Nothing in the record of this case supports that contention. We cannot judicially notice that the State of Delaware has a compelling interest in encouraging the growth of municipalities. This is not "What everybody knows the court must know * * *." Jacobson v. Massachusetts, 197 U.S. 11, 30, 25 S.Ct. 358, 363, 49 L.Ed. 643 (1904).

Accordingly, we do not pass upon the question of whether the encouragement of the growth of municipalities is a compelling state interest. We hold only that the defendants have failed to show such compelling state interest as would necessitate the weighted voting provisions here in question.

■ The extension of the boundaries of a city is generally regarded as a political matter entirely within the power of a state legislature to regulate, unless specifically restrained by the Constitution. 2 McQuillen Mun.Corp. (3d Ed.) § 7.10. However, once the state has established an electoral procedure to decide such an issue, the constitutional principles relevant to elections apply. The constitutional mandate of "one man, one vote" applies not only to the selection of elective bodies which exercise general governmental powers at the local level, Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), but also to an electoral determination of which local governmental subdivision shall exercise such powers.

■ The defendants have failed to show the requisite compelling state interest which necessitates the weighted voting provisions of the Dover Charter and 22 Del.C. § 101. We hold, therefore, that the provisions for weighted voting in the Dover Charter and in 22 Del.C. § 101 are violative of the Equal Protection Clause of the Federal Constitution.

Accordingly, the Order of the Court of Chancery, invalidating the annexation election of August 23, 1973, is affirmed.

■ In so doing, we approve the views of the Court of Chancery as to nonretroactivity. See 314 A.2d at 215–216. Undue hardships and substantial inequities would be imposed if this decision were given general retroactive effect as to other annexation elections previously held in the State. Therefore, this decision will not have retrospective effect; it will be given prospective effect only, except for the Dover election of August 23, 1973. See ·Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969).