# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF DELAWARE, | : | |
| | : | |
| Plaintiff, | : | C.A. No. S25C-12-003 CAK |
| | : | |
| v. | : | |
| | : | |
| THE TOWN OF FENWICK ISLAND, | : | |
| | : | |
| Defendant. | : | |
| | : | |

Submitted:  May 21, 2026

Decided: May 26, 2026

## UPON DEFENDANT'S MOTION TO DISMISS

### Granted

### <u>MEMORANDUM OPINION AND ORDER</u>

Andrew Bernstein, Esquire, American Civil Liberties Union, 100 W. 10th Street #706, Wilmington, DE 19801; Attorney for Plaintiff.

Luke W. Mette, Esquire, Joseph Grubb, Esquire, Mark A. Denney, Esquire, Brockstedt Mandalas Federico, 1413 Savannah Road, Suite 1, Lewes, DE 19958; Attorneys for Defendant.

**KARSNITZ, R.J.**

# INTRODUCTION

What is a "person?" When one cuts to the heart of this case, that is the question. The philosopher Diogo Joao Baptista Gomes of Brachtenbach, Luxembourg has answered the question as follows:

> The question of what a person is isn't exclusive to philosophy. Consequently, there are many answers. In a physiological and biological context, a person is a human being with certain essential physiological and biological characteristics.
>
> Legally, the answer is broader. *According to the law, a person is anyone or anything that can initiate and be subject to legal proceedings.* By this conception, any adult, corporation, or institution is a person, but a minor is not a person, a fetus is not a person, and a humanoid robot … is not a person. This highlights that legal personhood is dependent solely on legal recognition.
>
> In this sense a legal person is like a political person. A political person is anyone who has citizenship. The humanoid robot … has been granted citizenship in Saudi Arabia, which demonstrates the contingency of political personhood. Moreover, there is no shortage of people who have had their citizenship stripped, whose political personhood is therefore non-existent.
>
> In philosophy, a human being is a person if they're a moral agent, making moral judgements and taking moral actions. Metaphysically, the set of criteria for personhood include rationality or logical reasoning, consciousness, self-consciousness, use of language, ability to initiate action, moral agency, and intelligence. The humanoid robot or a young child may meet sufficient criteria here. A corporation or institution does not.
>
> In practice, however, only legal and political personhood are of significance, and these are contingent on recognition by political or legal institutions. However, metaphysical and moral personhood provide an intellectual foundation upon which to discuss legal and

political personhood. Therefore, I suggest that a person in its full sense – both theoretically and practically – is *a metaphysical and moral being with legal and political recognition*. The former is sufficient for theoretical personhood and the latter is sufficient for practical personhood, and both are necessary for full personhood. [emphasis supplied][1]

In 2008, the Delaware General Assembly amended the Charter of the Town of Fenwick Island ("Fenwick"), a small coastal community,[2] to allow Fenwick to expand its voter registration rolls to allow individuals to cast votes on behalf of trusts, limited liability companies, partnerships, and corporations that own property in Fenwick. Today, the overwhelming majority of legal entity property owners in Fenwick registered to vote, and on whose behalf votes are cast, are trusts.

In this action, the American Civil Liberties Union of Delaware, a corporation ("Plaintiff"), challenges these provisions, asserting that Fenwick's Charter violates the Elections Clause of the Delaware Constitution by way of "vote dilution;" i.e., the dilution of votes of human beings by votes of artificial legal entities.

## PROCEDURAL BACKGROUND

Plaintiff filed its Complaint on December 4, 2025, seeking (1) a declaratory judgment that "non-human artificial entity voting" in Fenwick's municipal elections violates the Elections Clause of the Delaware Constitution, and (2) an order

---

[1] Philosophy *Now*, Issue 149, April/May 2022.
[2] 76 Del. Laws, ch. 363 (2008).

permanently enjoining Fenwick from "counting ballots cast by non-human artificial entities" in upcoming[3] and future Fenwick elections. By way of a Stipulated Order dated January 14, 2026, Defendant's motion to dismiss (the "Motion") under Superior Court Civil Rule 12(b), and opening brief in support thereof, were due on or before February 16, 2026. Defendant filed the Motion under Superior Court Civil Rules 12(b)(1) and 12(b)(6), together with its opening brief in support thereof, on February 16, 2026. Plaintiff filed its Answering Brief on March 2, 2026. Defendant filed its Reply brief on March 19, 2026. I held oral argument on the Motion on May 4, 2026. In a May 6, 2026, letter, Plaintiff requested to take a deposition of a Fenwick official, but also stated that, from Plaintiff's perspective, the Motion had been fully briefed and argued and was ripe for decision without regard to the deposition. The tight timeline made it imperative for the resolution of the matter ahead of Fenwick's next scheduled election. On May 21, 2026, I clarified that Plaintiff had my permission to take the deposition, and that I was not awaiting the deposition to issue my decision on the Motion. This is my decision on the Motion.

## BASIS FOR DECISION

In its Motion, Defendant seeks dismissal on four grounds under Superior Court Civil Rules 12(b)(1) and 12(b)(6): (1) Plaintiff lacks standing to bring this Complaint, (2) I lack subject matter jurisdiction as a court of law to issue the

---

[3] The next Fenwick election is scheduled for August 1, 2026.

4

injunction Plaintiff seeks in the Complaint, (3) Plaintiff has failed to join other Delaware municipalities which are necessary parties to this litigation, and (4) the Complaint fails to state a claim upon which relief can be granted. Even if I were to decide all of the first three issues in favor of Plaintiff, if I decide the fourth issue against Plaintiff, that decision is dispositive of the case. I express no opinion either way as to the first three issues. Rather, as a matter of judicial economy, I consider only the fourth issue, which is dispositive.

**OVERVIEW OF CERTAIN PROVISIONS OF THE DELAWARE CONSTITUTION AND CODE AND THE CHARTER AND CODE OF FENWICK**

The Elections Clause of the Delaware Constutuion states, in its entirety: "All elections shall be free and equal."[4] The clause is eloquent in its simplicity but lacks specific direction in application.

Under Delaware's "Home Rule" statute for municipalities, the State of Delaware defines "qualified voters" to mean "those persons who, under the terms of a municipal charter, shall be authorized to vote in elections within that municipal corporation."[5]

For all Delaware municipalities other than the City of Wilmington, Delaware by statute has set forth voter eligibility criteria as follows: "(a) Voter eligibility shall

---

[4] DEL CONST. art. I, § 3.
[5] 22 *Del. C*. § 801(4).

be as specified within the town charter; provided however, that in no event shall a municipality impose a durational residency requirement in excess of 30 days."[6]

Fenwick was incorporated in 1953 by an act of the Delaware General Assembly.[7] Like other Delaware municipalities, Fenwick has amended its charter by acts of the General Assembly "so as to have and assume *all powers which, under the Constitution of the State, it would be competent for the General Assembly to grant by specific enumeration and which are not denied by statute*."[8]

Fenwick's Charter provides that *bona fide* residents who are registered to vote "shall have one vote."[9] Nonresident voting in Fenwick has been authorized since Fenwick was incorporated in 1953.[10] In 2008, the General Assembly amended Fenwick's Charter[11] to provide, in relevant part, what remains today as Section 9A (2-4) (emphasis added):

> (2) *Non-residents:* Every property owner as of March 1 prior to the annual municipal election, *whether a natural person or artificial entity, including but not limited to corporations, partnerships, trusts, and limited liability companies, and who is registered to vote, if provided by ordinance, shall have one vote*. A natural person shall be a citizen of the United States and age 18 on or before the date of the election. *An artificial entity shall be a domestic entity in the State of Delaware*.

---

[6] 15 *Del. C.* § 7554.
[7] 49 Del. Laws, ch. 302 (1953).
[8] 22 *Del. C.* § 802 (emphasis supplied).
[9] Town of Fenwick, Del., Charter, § 9A(1)(a) (2018).
[10] *See* 49 Del. Laws, ch. 302 (1953), § 9 (Qualification of Voters).
[11] 76 Del. Laws, ch. 363 (2008) (emphasis supplied).

(3) *These provisions shall be construed in accordance with the principle of "one person/entity, one vote."* Where a voter is entitled to vote by virtue of being both a resident and as an owner of real property, that voter shall be entitled to only one vote; *where a voter is entitled to vote by ownership of two or more parcels of real property, that voter shall be entitled to only one vote*.

(4) *Any legal entity other than a natural person entitled to vote, must cast its vote by a duly executed and notarized power of attorney from the legal entity granting the authority to cast its vote to its designated attorney-in-fact... The person casting the ballot for such entity shall be age 18 on or before the date of the election and a citizen of the United States.*

## STANDARD OF REVIEW

It is well established that I must dismiss a complaint if a plaintiff cannot prevail on any set of facts that can be inferred from the Complaint.[12] Although on a motion to dismiss the Court accepts as true all well-pleaded factual allegations in the complaint,[13] it is not bound to "'accept conclusory allegations unsupported by specific facts or ... draw unreasonable inferences in favor of the non-moving party.'"[14] "'[A] claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law.'"[15] A copy of any written instrument which is an exhibit to a pleading is a part thereof

---

[12] *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Aug. 20, 2004).

[13] *Middlecap Assocs., LLC v. Town of Middletown*, 2023 WL 6848999, at *2 (Del. Super. Oct. 16, 2023).

[14] *Id.* (quoting *Price v. E.I. DuPont de Nemours & Co.,* 26 A.3d 162, 166 (Del. 2011)).

[15] *Id.* (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)).

7

for all purposes and may therefore be considered on a motion to dismiss.[16]

## THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Elections Clause of the Delaware Constitution consists of only seven words: "All elections shall be free and equal."[17] Plaintiff makes no argument that Defendant's elections are not "free" within the meaning of that clause. As discussed more fully below, in my view, Plaintiff does not make a compelling argument that Defendant's elections are not "equal" within the meaning of that clause. The Elections Clause has been rarely invoked in litigation in Delaware.[18] Plaintiff does not cite Delaware case law for the proposition that its vote dilution allegations violate the Elections Clause.

### Free Elections

In *Abbott v. Gordon,[19]* an unsuccessful candidate claimed county officials engaged in a conspiracy to defeat him in a primary election. *Abbott* was not a vote dilution case. The court observed that the purpose of the Elections Clause "is to ensure that the right of citizens to vote in an election is *unfettered,*" including

---

[16] Super. Ct. Civ. R. 10(c); *see Willis v. City of Rehoboth Beach,* 2004 WL 2419143, at *1 fn.1 (Del. Super. Oct. 14, 2004).
[17] DEL CONST., art. I, § 3.
[18] See *Young v. Red Clay Consol. Sch. Dist.*, 122 A.3d 784, 815 (Del. Ch. 2015) (noting there is a "dearth of caselaw" interpreting Delaware's Elections Clause).
[19] *Abbott v. Gordon*, 2008 WL 821522 (Del. Super. Mar. 27, 2008), *aff'd*, 957 A.2d 1 (Del. 2008).

specifically "free and equal access to the polls."[20] Plaintiff does not allege that any natural person's ability to vote in Fenwick, or access to Fenwick's polls, is restricted in any way.

*Young*, like *Abbott*, was not a vote dilution case. The plaintiffs in *Young* were residents of the Red Clay School District who opposed a tax increase and claimed they did not vote on the tax increase because they were unable to access the polls.[21] Plaintiffs alleged Red Clay encouraged and facilitated voting by families with children while it discouraged and raised impediments to voting by elderly and disabled residents.[22] The *Young* Court determined that: "[a]n election in which certain voters received money or other valuable things for their votes is not 'free' and 'equal.'"[23] Plaintiff does not allege that access to the polls is impeded in any way. Nor does Plaintiff allege that entity property owners which voted received any rewards or bribes for voting.

In *League of Women Voters of Delaware, Inc. v. Department of Elections*,[24] the Court rejected an argument that deadlines for the return of mailed ballots under vote-by-mail and absentee voting statutes violated the Elections Clause. *League of Women Voters* was not a vote dilution case. Plaintiff alleged that pandemic era

---

[20] *Id.,* at *19-20 (emphasis supplied).
[21] 122 A.3d at 790.
[22] *Id.*
[23] *Id.* at 846.
[24] 250 A.3d 922 (Del. Ch. 2020).

9

delays in mail delivery would result in ballots not being counted,[25] and that this alleged burden infringed on their right to vote.[26] The Court concluded, however, that the statutes at issue made voting easier, not harder, and that the "additional burden incidental to the expansion of voting rights" under the statutes was not clearly incompatible with the Elections Clause.[27] Plaintiff does not allege the votes of natural persons in Fenwick were "burdened" or not counted.

Together, *Abbott, Young* and *League of Women Voters* generally construe "free" elections under Delaware's Elections Clause to mean elections free of fraud, physical coercion, force, improper influence, intimidation, violence, impediments to voting, or financial incentives.[28] As the *Young* Court noted, elections are "free" when "voters are subjected to no intimidation or improper influence, and where each voter is allowed to cast his ballot as his own conscience dictates."[29] Plaintiff makes no such allegations here.

**Equal Elections**

The *Young* court, after canvassing cases from other jurisdictions, noted that elections are "equal" when "the vote of each voter is equal in its influence upon the result to the vote of every other elector" and when "each ballot is as effective as

---

[25] *Id.* at 930-31.

[26] *Id*. at 935.

[27] *Id*. at 936.

[28] *See Abbott*, 2008 WL 821522 at *19-20; *Young*, 122 A.3d at 857-58.

[29] *Young*, 122 A.3d at 841 (citations omitted).

every other ballot."[30] Plaintiff does not argue that Defendant gives entity property owners any special treatment in voting, that voting in Fenwick on behalf of entity property owners involves racial discrimination or malapportionment of voting districts, or that natural persons' votes are not equal in influence, count less than, or are not as effective as every other ballot. As stated above, Defendant's Charter includes the concept of one natural person/one entity property owner/one vote.[31] Each natural person registered to vote in Fenwick gets one vote in Fenwick's single-district, open elections for Town Council, no more or no less than any entity property owner which is registered to vote.

**Presumption of Constitutionality**

Laws enacted by the Delaware General Assembly, such as Fenwick's Charter, are presumed to be constitutional. [32] To overcome this presumption of constitutionality, Plaintiff must provide "clear and convincing evidence" that there is no set of circumstances under which the contested status could be constitutional.[33] Plaintiff argues that I should subject Fenwick's Charter to "strict scrutiny" review. However, Plaintiff did not frame its Complaint as an equal protection or due process

---

[30] *Id*. at 841 (citations omitted).
[31] Fenwick Charter § 9(A)(3).
[32] *McGowan v. Maryland*, 366 U.S. 420, 425-26 (1960); *Albence v. Higgin*, 295 A.3d 1065, 1088 (Del. 2022); *League of Women Voters,* 250 A.3d 922, 934 (Del. Ch. 2020).
[33] *League of Women Voters*, 250 A.3d at 934; *see also Sierra v. Dep't of Servs. For Children, Youth & Their Families,* 238 A.3d 142, 156 (Del. 2020) *(citing Monceaux v. State,* 51 A.3d 474, 477 (Del. 2012)).

11

claim, but rather as a declaratory judgment action. Under Delaware law, courts apply a "sliding scale" in voting rights cases.[34] Where the state's alleged burden on voting is not severe, the state's intervention need only have served a legitimate interest.[35] Indeed, Delaware courts have found a rational basis for *expanding* the voting franchise.[36]

**Other Delaware Cities and Towns**

The Delaware General Assembly has expressly authorized, by way of charter, voting on behalf of entity property owners in several jurisdictions other than Fenwick.[37] In addition, the Delaware General Assembly has defined qualified voters for special elections of annexation in the City of Wilmington to include "each owner of a parcel of real estate located in the territory, as evidenced by the assessment records of the County", provided that "[c]orporations, limited partnerships or other entities which own real estate in the territory shall be entitled to 1 vote each."[38] While

---

[34] *Young*, 122 A.3d at 832-33; *League of Women Voters,* 250 A.3d at 936-37.

[35] *Young,* at 833; *League of Women Voters*, at 936.

[36] *See Dupont v. Mills*, 39 Del. 42 (Del. 1937); s*ee also* Del. Op. Atty. Gen 09-IB05, 2009 WL 1805910 (2009) (finding the precedent of cases applying rational basis test to nonresident vote dilution cases to be "overwhelming").

[37] *See, e.g*., Town of Henlopen Acres, Del., Charter, § C-5B(2) (2014) ("Every nonresident real property owner, whether a person, or artificial entity, qualifying as a real property owner"); City of Rehoboth Beach, Del., Charter, § 7(d) (2019) (defining "freeholder" to include a natural person "who is both grantor/settler and trustee of a valid revocable trust to which real property located within the City has been conveyed"); Town of Dewey Beach, Del., Charter, § 10(b)(4) (2021) (if a person is "both the trustee and a settlor or creator of a valid trust to which real property located within the Town has been conveyed and that conveyance [sic] recorded in the Office of the Recorder of Deeds in and for Sussex County").

[38] 15 *Del. C*. § 7543(a)(2).

this is not dispositive of this case, it does show that the General Assembly's treatment of Fenwick is not unique, different, or unusual.

**"Persons"**

As discussed in the philosophical rumination with which I began this opinion, Plaintiff's ultimate argument appears to be that voters who are human beings are being deprived of their rights, or at least having the impact of those voting rights diluted, by the votes of artificial entities, or, put more bluntly, such artificial entities should not be entitled to vote. In its Answering Brief, Plaintiff devotes a significant amount of its argument by emphasizing the words person, people, humans, citizens, popular, and the like. In my view, even if those words as used in statutes and cases are acknowledged to be people-centric or person-centric, that does not support a legal argument that the Elections Clause of the Delaware Constitution supports Plaintiff's expansion of traditional vote dilution law to encompass what it calls the "debasement" of "the right of human voters" through "artificial entity voting".[39]

Trusts, partnerships, limited liability companies, and corporations are expressly recognized as "persons" in the Delaware Code, including Delaware's

---

[39] Answering Brief at 22–28.

Revised Uniform Partnership Act, [40] Limited Partnership Act, [41] and Limited Liability Act.[42] This recognition of rights for legal entities in Delaware specifically includes corporations:

> Persons are divided by the law into persons natural and persons artificial. *The term "person" prima facie, at common law and apart from any statutory enactment limiting its meaning, includes both natural and artificial persons, thus, as a general rule includes corporations*. A corporation is not a natural person but, rather, it is an artificial person, and that artificial person is a legal fiction. *The general tendency and policy of legislatures and courts has been to treat corporations, as far as their inherent nature will permit, on the same footing as individuals*.[43]

However, I need not rule in this case as to whether entity property owners are constitutionally required to have their votes count or constitutionally precluded from doing so. Rather, I need only rule whether Plaintiff has met it burden of providing clear and convincing evidence that there is no set of circumstances under which Fenwick's Charter, as adopted and amended by the Delaware General Assembly, could be constitutional. It has not.

---

[40] 6 *Del. C.* § 15-101(19) (defining "Person" to include a natural person, partnership (whether general or limited), limited liability company, trust (including a common law trust, business trust, statutory trust, voting trust or any other form of trust), corporation, or any other individual or entity (or series thereof) in its own or any representative capacity, in each case, whether domestic or foreign.

[41] 6 *Del. C.* § 17-101(16).

[42] 6 *Del. C.* § 18-101(14).

[43] 18 Am. Jur. 2d Corporations § 65 (2026) (citations omitted) (emphasis supplied).

**Vote Dilution and Equal Protection**

Although Plaintiff did not raise an equal protection challenge to the Fenwick Charter, I will address it briefly. The concept of "vote dilution" derives from racial discrimination cases involving unlawful electoral apportionment schemes challenged under the Voting Rights Act of 1965 and the Equal Protection Clause of the Fourteenth Amendment to the Unites States Constitution. Vote dilution is typically invoked in claims asserting the abridgement or denial of voting rights of racial minorities. Under the former *Gingles* test, the United States Supreme Court requires a plaintiff to first establish three pre-conditions to prevail on a claim under Section 2 of that Act: (1) the minority group must be "sufficiently large and geographically compact to constitute a majority" in a hypothetical single-member district; (2) the minority group must be "politically cohesive"; and (3) the majority group must "vote sufficiently as a bloc to enable it . . . to defeat the minority's preferred candidate."[44] However, in light of the Supreme Court's recent decision in *Louisiana v. Callais*,[45] it is probable that vote dilution cases under Section 2 of the Voting Rights Act are no longer viable.

The principle of "one person one vote" (invoked repeatedly in Plaintiffs' Complaint) has its roots in a series of United States Supreme cases pre-dating the

---

[44] *Johnson v. De Grandy,* 512 U.S. 997, 1006-07 (1994).
[45] 608 U.S. ___ (April 29, 2026).

15

Voting Rights Act of 1964. [46] These cases reviewed under the Fourteenth Amendment the constitutionality of legislative apportionment schemes whereby residents in less populous voting districts were afforded disproportionally more electoral power (in the form of elected representatives) compared to residents in more populous districts. The result in such apportionment schemes is a disparity in representation among citizens. The representational power of citizens in the more populous districts is effectively "diluted". Hence the phrase "one person one vote".

In *Mayor & Council of City of Dover v. Kelley*,[47] an equal protection case (but not an Elections Clause case), the Delaware Supreme Court discussed the notion of "one person one vote" in the context of a Dover charter provision that weighed votes in an annexation election according to the assessed value of real estate owned by each voter. The Court concluded that such weighted voting provisions constituted "an infringement or burden upon the right to vote."[48]

In *Young*, the court framed the equal protection issue as whether Red Clay treated identifiable groups differently by favoring families with children and disfavoring the elderly and disabled, based on the way those groups were likely to vote.[49] Specifically, the *Young* court reviewed federal jurisprudence requiring an

---

[46] *Baker v. Carr*, 369 U.S. 186 (1962); *Gray v. Sanders*, 372 U.S. 368 (1963); *Reynolds v. Sims*, 377 U.S. 533 (1964).
[47] 327 A.2d 748 (Del. 1974).
[48] *Id*. at 753.
[49] *Young,* 122 A.3d at 835-36.

16

"independently identifiable group or category" as to which the government body acted with "discriminatory intent" to "fence out" that group from voting "because of the way they may vote."[50]

In my view, even if Plaintiff had made a "vote dilution" or "one person/one vote" claim under the Equal Protection Clause, it fails. Plaintiff does not assert facts that would adequately support such a claim. Plaintiff does not allege discrimination based on race or political partisanship, malapportionment among voting districts, that natural person voters are a minority or are politically cohesive, that entity property owners vote sufficiently as a bloc to usually defeat the preferred candidates of natural persons, that some votes are weighted or count more than others, or that Fenwick's Charter distinguishes between natural persons and entity property owners with the discriminatory intent to fence out natural persons based on how they are likely to vote.

**Other Delaware Constitutional and Statutory Provisions**

Plaintiff cites three additional Delaware constitutional or statutory provisions to support its position. First, it cites Article V § 7 of the Delaware Constitution, which concerns criminal penalties for certain elections offenses such as bribery, the

---

[50] *Id.* (citations omitted). Similarly, even in the non-Delaware case cited by Plaintiff in its Complaint, the California Court of Appeals found an equal protection violation only in the context where directors were elected by landowners *only*, thereby completely foreclosing other residents' right to vote. *Bjornestad v. Hulse*, 229 Cal. App. 3d 1568, 1580, 1585-86 (Ct. App. Cal. 1991).

17

prevention or hindering of voting by force, threat, menace, or intimidation. However, Plaintiff asserts no such conduct in this case.

Second, Plaintiff cites Article V § 2 of the Delaware Constitution, which provides that, in Delaware's statewide general elections, every citizen who is 21 years old and who has been a resident for one year preceding the general election shall be entitled to vote in such an election, subject to other limitations. On its face, this provision does not apply to municipal elections conducted pursuant to state enacted charter provisions. Even if it did, the use of the word "citizen" does not necessarily exclude entity property owners in Fenwick who cast their votes, and Plaintiff argues no such interpretation of the word.

Third, Plaintiff cites 15 *Del. C.* § 101A. The express purpose of that section of the Delaware Code is to assure "free and equal elections, as guaranteed by our state Constitution."[51] For example, it addresses the right to "form political parties, nominate candidates and cast ballots."[52] It expresses concern over lengthy ballots might lead to "voter confusion" and "clog the election machinery."[53] Perhaps most relevant, § 101A states that "[t]o secure the right to free and equal elections and to preserve the integrity of the democratic process, it is essential that an orderly system be established" for, among other things, the registration of voters, the conduct of

---

[51] 15 *Del. C.* § 101A.
[52] *Id.*
[53] *Id.*

18

general elections, the certification of election results, and "for all such other matters, related to the electoral process, as may be set forth herein."[54] There is a process under this statute to challenge votes and election outcomes, but Plaintiff did not do so. Nor did Plaintiff assert fraud or unfair dealing. At this juncture, its claims that voting on behalf of entity property owners could have affected the 2024 election results are speculative.

**CONCLUSION**

I appreciate that Plaintiff may disagree with Delaware's policy of authorizing certain municipalities to allow voting on behalf of entity property owners. Visions of faceless large corporations or even HAL,[55] controlling a small town are frightening and the stuff of science fiction. However, Plaintiff has not demonstrated that this policy violates the principle of one person/entity/one vote. Plaintiff points to no other persuasive independent authority than the Elections Clause of the Delaware Constitution itself. And matters of policy are appropriately left to legislative bodies, not the courts.

For the reasons stated above, Defendant's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

---

[54] *Id.*

[55] HAL is the acronym for the Heuristically Programmed Algorithmic Computer, a central character in Stanley Kubrick's 1968 film, *2001: A Space Odyssey*.

19

/s/ Craig A. Karsnitz
Craig A. Karsnitz

cc:  Prothonotary