[No. 29787.  *En Banc.*  November 20, 1945.]

GENEVIEVE MARTIN, *as City Clerk of Tacoma, Respondent,* v. THOR C. TOLLEFSON *et al., as Pierce County Election Board, Appellants.*[1]

[1]Reported in 163 P. (2d) 594.

*Thor C. Tollefson, Theo. L. DeBord,* and *J. D. Barline,* for appellants.

*Howard Carothers, Clarence M. Boyle, George F. Abel,* and *Hugo Metzler, Jr.,* for respondent.

ROBINSON, J.—The parties to this action have agreed that the only question involved on this appeal is:

"Is Chapter 60 of the Session Laws of the State of Washington for 1945 unconstitutional and in violation of Article II, Section 28, subsection 8 and Article XI, Section 10 of the Constitution of the State of Washington?"

It will, therefore, be unnecessary to state how the question arose. The trial court held the act unconstitutional, and appellants are here contending that it is not. We quote the act in full, italicizing certain words in the body of the act and the same words in its title:

### "ELECTIONS IN FIRST CLASS CITIES.

"AN ACT relating to elections in first class cities having a population in excess of 100,000 and not greater than

150,000, *as shown by the 1940 census of the United States,* and repealing inconsistent acts.

"Be it enacted by the Legislature of the State of Washington:

"Section 1. Candidates for office in cities of the first class having a population in excess of one hundred thousand (100,000) and not greater than one hundred fifty thousand (150,000), *as shown by the 1940 census of the United States,* shall be nominated at primary elections to be held in such cities on the second Tuesday in February preceding the general election at which such offices will be filled: *Provided,* That the two candidates receiving the highest number of votes cast for each office to be filled shall be the nominees and their names shall appear on the ballot to be voted upon at said general election.

"Sec. 2. All acts or parts of acts in conflict herewith are, to the extent of such conflict, repealed.

"Passed the House February 13, 1945.

"Passed the Senate March 6, 1945.

"Approved by the Governor March 14, 1945." (Italics ours.)

If the above act, which will hereinafter be referred to as chapter 60, is constitutional, it will require a change in the election procedure now provided by the Tacoma city charter, as it is conceded by appellants that:

"In order to comply with the provisions of Chapter 60 of the Session Laws of 1945, it will be necessary for the City Clerk of the City of Tacoma to certify to the Pierce County Election Board the list of offices to be filled and the names of the candidates for such offices about two weeks earlier than required by the City Charter; the opening and closing dates for the filing of declarations of candidacy will be advanced about two weeks, and Section 106 of the City Charter, providing that the candidate receiving a majority of the votes cast at the primary election shall be elected, will become inoperative." Appellants' brief, p. 6.

In short, the effect of chapter 60 is to amend the Tacoma charter. As to what effect, if any, it would have as to the charter of Spokane, the only other city in the state having a population of between 100,000 and 150,000, as shown by the census of 1940, we are not informed.

The constitutional provisions involved are as follows:

"Art. 2, § 28. The legislature is prohibited from enacting any private or special laws in the following cases: . . .

"8. For incorporating any town or village, or to amend the charter thereof."

Section 10 of Art. XI is more than a page in length. That portion upon which respondent chiefly relies reads as follows:

"Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization, and classification, in proportion to population, of cities and towns, which laws may be altered, amended, or repealed. Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith; *and cities or towns heretofore or hereafter organized and all charters thereof framed or adopted by authority of this constitution shall be subject to and controlled by general laws.* . . ." (Italics ours.)

The appellants contend:

(1) That, in the absence of constitutional prohibition, the enactment of special laws is within the power of the legislature. The following is a fairly representative example of the appellants' numerous quotations in support of this contention:

"In the absence of conditional [constitutional] prohibition, *express or implied,* the enactment of special or local laws is clearly within the power of a state legislature." 25 R. C. L. 819, Statutes, § 67. (Italics ours.)

(2) That subd. 8 of § 28 of Art. II of the constitution merely forbids the legislature from passing any private or special act incorporating "any town or village," or amending the charter thereof. Chapter 60 affects only cities having a population in excess of 100,000, and not greater than 150,000, and, therefore, its enactment is not prohibited by that constitutional provision.

(3) That § 10 of Art. XI of the constitution in no way prohibits the legislature from annulling city charters by private or special laws.

(4) That, in any event, chapter 60 is not a private or special law, or at any rate it should not be construed to be; and, in support of the latter part of the contention, it is said:

"We also submit that it was the intent of the legislature to pass an act which was constitutional rather than unconstitutional, and it was its intention that the act in question should be prospective in its nature and that, therefore, by judicial construction, the words '1940 census of the United States' should be construed to mean the 'last official census of the United States.' As such, the statute would be a general law rather than special and would be prospective in its operation." Appellants' brief, pp. 30, 31.

■ That the first of the above-numbered contentions is sound, will be conceded.

■ We think that contention (2) is also well taken. To reject it, since all doubts must be resolved in favor of constitutionality, it would be necessary for the court to be convinced that, when the framers of the constitution used the words "town or village" in subd. 8 of § 28 of Art. II, they used them generically, as respondent contends, meaning any and all municipalities, or, at the very least, that they meant to include municipalities of a population of more than 100,000. We are inclined to the view that they used the words "town or village" in contradistinction to "city," and, although we have no way of determining just where the makers of the constitution drew the line between "town or village," on the one hand, and "city," on the other, we do at least know that they considered a municipality of 20,000 inhabitants or more to be a city; for, we find the following language in § 10 of Art. XI: "Any *city* containing a population of twenty thousand inhabitants or more. . . ." (Italics ours.)

It is our opinion, and we so hold, that, since chapter 60 deals only with municipalities having a population in excess of 100,000, it does not violate subd. 8 of § 28 of Art. II of the state constitution.

We, however, take issue with appellants' contention (3). We think § 10 of Art. XI of the constitution does prevent the amendment of city charters by special or private enact-

ments, although it does not do so in the direct manner used in prohibiting amendment by special acts, of the charters of villages or towns.

In support of their contention, appellants say, in their brief:

"Article XI, Section 10 of the Washington Constitution sets forth the manner in which cities and towns may organize and incorporate, and the manner in which cities of over 20,000 inhabitants may adopt a charter. With the exception of the first clause of the section, it is submitted that the entire section *is a grant or authorization* of powers and *not a limitation* of powers." Appellants' brief, p. 17.

And, again, on the following page, appellants say, of the same constitutional provision:

"This section merely guarantees to cities and towns the right to organize or incorporate and, to cities of over 20,000 inhabitants, the right to be governed by a charter framed and adopted in accordance with this section."

■ We agree with appellants that § 10 of Art. XI of the state constitution is chiefly concerned with grants. The people, under our system of government, are the source of all governmental power, and they adopted the constitution for the purpose of creating certain agencies through which that power should be exercised. In so doing, they made a grant of legislative power directly to the cities in § 10, Art. XI. We quote the exact terms of this grant:

"Any city containing a population of twenty thousand inhabitants or more shall be permitted to frame a charter for its own government consistent with and subject to the constitution and laws of this state, . . ."

Had the people who created the constitution stopped at that point, which, since they possessed all governmental power, they could, of course, have done, we take it that no one would contend that the state legislature could change or amend a duly adopted city charter by the passage of any act whatever, whether general or special. But the constitution makers, in their wisdom, provided a check on the sweeping power thus granted to cities by including in the same section the following limitation:

" . . . and cities or towns heretofore or hereafter organized and all charters thereof framed or adopted by authority of this constitution shall be subject to and controlled *by general laws.*" (Italics ours.)

■ This is a limitation on the constitutional grant of legislative power to cities to frame charters for their own government, and, like all limitations, it is subject to strict and literal construction. Nothing can be taken away, and nothing can be added. It is perfectly clear that the overall, comprehensive grant to the cities to frame charters for their own government is limited by reserving to the legislature the right to control such charters by general laws, and by general laws only.

■ It is no answer to the foregoing to say that all legislative power is vested in the legislature, which may, therefore, pass any act, general or special, unless it is constitutionally forbidden. That is generally applicable, but we have here the rare and exceptional instance wherein the framers of the constitution, in distributing legislative power, granted legislative power directly to cities to enact charters for their own local government, and placed upon that power one sole and only limitation, namely, that such charters "shall be subject to and controlled by general laws." The charter of the city of Tacoma can only be lawfully altered or amended by chapter 60 if that chapter is a general law; and to the appellants' contention (4) that it is a general law, or, at least, can lawfully be construed to be a general law, we now address ourselves.

■ It is thoroughly well settled that the legislature may classify municipalities for the purpose of legislation and pass laws applicable only to those within the designated class, but:

"Such classification must not be based on existing circumstances only or so constituted as to preclude additions to the number included within a class, but must be of such a nature as to embrace all those who may thereafter be in similar circumstances and conditions." 12 Am. Jur. 146, Constitutional Law, § 479.

It is said, in 1 McQuillin, Municipal Corporations (2d ed. rev.) 635, §.218:

"Consequently, where a general law applies to cities of a specified population, it must not only include all cities which acquire that population in the future, but must cease to apply to cities whose population falls below the requirement of the law."

This proposition is even more directly put in the most recent edition of Sutherland's Statutory Construction (3d ed.):

"A classification by population must be prospective to be general. *An act limited to a particular census is a form of identification and invalid, as no subsequent changes in population would enable other communities to come within the qualifications of the act."* (Italics ours.) Vol. 2, p. 36, § 2109.

Although the exact question presented on this appeal has not been hitherto decided in this court, it has frequently approved and applied the foregoing rules. It was strongly intimated, in the case of *State ex rel. Allen v. Schragg,* 159 Wash. 68, 71, 292 Pac. 410, that counties could not be lawfully classified according to any particular census. We quote from *Nicholls v. Spokane School Dist. No. 81,* 195 Wash. 310, 80 P. (2d) 833, 82 P. (2d) 857:

"The classification of the school districts into those that were using coal mined outside of the state at the time of the passage of the act and those that were not, is fixed as of the date that the law became effective, and that classification must remain continuously without any provision for, or anticipation of, future conditions. The classification is based upon whether a particular district, at the time of the passage of the act, was using coal 'mined or produced' outside of the state.

"A statute which makes a classification as of the time of its passage and makes no provision for future changed conditions is a special, and not a general, law, . . ."

The courts of other states, however, have applied these rules to statutes very similar to chapter 60. We quote from *State v. Scott,* 70 Neb. 685, 100 N. W. 812:

"The operation of the act is limited to counties having

over 50,000 inhabitants according to the census of 1900. The court takes judicial notice of the fact that there are only two counties in the state of Nebraska which had over 50,000 inhabitants according to the census of 1900. These are the counties of Douglas and Lancaster, and the act might as well have stated in express terms that in the counties of Douglas and Lancaster the county surveyor shall be, ex officio, county engineer, as to limit the class of counties to which it is applicable to a class which plainly and inevitably contains only the two counties named. The object of the law may be wise, and the reform sought to be accomplished may be salutary. . . . But this end is as necessary to be attained in all counties which may in the future reach the population prescribed by this act, as in those which are now in the class. This act is so framed that it can not in the future apply to other counties which may attain the requisite population. The classification therefore is arbitrary and points out the two counties named as clearly and specifically as if they had been designated by their proper names. The effect of the statute is to remove the counties of Douglas and Lancaster from the operation of general laws applying to all counties in the state. A general law can plainly be made applicable to all counties having the required population, without the limitation to those which had 50,000 population by the census of 1900. It is clear, therefore, that this is a local and special act applying only to these two counties, that a general law may be made applicable, and that the act therefore is in violation of the constitutional restrictions."

In the instant case, the operation of chapter 60, Laws of 1945, is limited to cities having over 100,000 inhabitants, and not more than 150,000, "as shown by the 1940 census of the United States." We take judicial notice that there are only two cities in Washington which had over 100,000 inhabitants, and not greater than 150,000, as shown by the 1940 census of the United States. These are the cities of Tacoma and Spokane. The object of the law may be wise, and the reform sought to be accomplished may be salutary, but this end is as necessary to be attained in all cities which may, in the future, reach the population prescribed by this act, as in those which are not in the class. Chapter 60, Laws of 1945, is so framed that it cannot, in the future, apply to other cities which may attain the requisite population. The

classification, therefore, is arbitrary, and points out the two cities named as clearly and specifically as if they had been designated by their proper names.

In the case of *Harlan County v. Brock*, 246 Ky. 372, 55 S. W. (2d) 49, a legislative act was attacked, as being special, which created the office of district detective in all judicial districts having a population of 100,000 or more, "according to the Federal Census of 1930." The court said:

"The classification is not made to apply to other districts which may in the future, or indeed at the time the act in question was passed, have attained the requisite population. This classification can in no event apply except to the situation disclosed by the federal census of 1930. It permits no changes, though the other judicial districts composed of two counties may by the passage of time become equal in population or even pass that of the twenty-sixth judicial district. Where classification is so static as this, it is not based on reasonable distinctions, but is essentially arbitrary; thus rendering the act based upon it special or local. The authorities are in entire accord on this proposition. It may be thus succinctly expressed: Where a classification is based on population according to a specific census, federal or state, an act based upon such classification is a local or special act and not a general one."

In discussing the question, the Kentucky court cites the following cases as direct authority for the proposition that an act classifying by population, according to a specific Federal census, is a special act: *State v. Scott, supra; State ex rel. West v. Des Moines*, 96 Iowa 521, 65 N. W. 818, 31 L. R. A. 186, 59 Am. St. 381; *Fleming v. Memphis*, 126 Tenn. 331, 148 S. W. 1057, 42 L. R. A. (N. S.) 493, Ann. Cas. 1913D, 1306; *State ex rel. Wiles v. Williams*, 232 Mo. 56, 133 S. W. 1, 34 L. R. A. (N. S.) 1060; *Central Trust Co. v. Citizens' Street R. Co.* (C. C.), 80 Fed. 218; and says that no cases to the contrary were cited to it, nor had it been able to find any. No case to the contrary has been cited to us, nor have we been able to find any. We have, however, found several which could be added to the above list, if it were deemed necessary to supplement it.

Appellants quote the following from 15 Am. & Eng. Ann. Cas. 858:

"Although the authorities on the point are in conflict, it appears to be the better view that a statute which classifies cities or other localities, to be governed by its provisions, by a given or fixed population 'according to the last United States census,' will be held to apply to all other cities or localities which under any federal census in the future may pass into such class, and is not, therefore, invalid. The expression 'last United States census' employed by the legislature in such a statute will be considered to refer to the last census preceding the enactment of the law, and to each succeeding census as it occurs, and under such circumstances the law will be held to be of a general character, and not of a special or local nature."

Appellants also quote from the case of *Bishop v. Tulsa,* decided in the Oklahoma criminal court of appeals and reported in 21 Okla. Crim. 457, 209 Pac. 228, 27 A. L. R. 1008, as follows:

"Construing the clause 'as determined by the last preceding census' according to the rules of construction above mentioned, we think the act means the census next preceding the organization of such a court, and that it is prospective as well as retrospective in its operation. If at some time subsequent to the enactment of this act Muskogee or some other city acquired 50,000 inhabitants it would automatically come within the classification and be entitled to a court, as in the act provided. Any other conclusion would not be in harmony with the established rules of constitutional and statutory construction. It would be equivalent to this court's saying that where a statute is susceptible of either of two constructions, one upholding its constitutionality and the other holding it in violation of the Constitution, the statute should be held invalid. The contrary is the true rule."

Respondent challenges the statement quoted from 15 Am. & Eng. Ann. Cas., on the ground that some of the decisions cited to sustain it are not in point. Whether they are or are not is completely irrelevant to our inquiry. The phrase used in chapter 60, Laws of 1945, and with which we are concerned, is not "according to the last United States census," as it was in the quotation from 15 Am. & Eng. Ann. Cas.,

nor is it "as determined by the last preceding census," as it was in the statute considered in the Oklahoma case. The language with which we are concerned is, "as shown by the 1940 census of the United States."

█ As has been indicated earlier in the opinion, appellants urge the court to construe this phrase to mean the "last official census of the United States." When statutory language is plain and unambiguous, and its meaning clear and unescapable, there is no room for construction. There is no ambiguity in the phrase, "as shown by the 1940 census of the United States." A conversion of that language into the "last official census of the United States" cannot be made by construction, or by any other method short of outright substitution.

Furthermore, it clearly appears from the legislative records that, in enacting chapter 60, the legislature rejected the wording, "as shown by the most recent census of the United States," and substituted therefor the words, "as shown by the 1940 census of the United States." We quote the title and section 1 of senate bill No. 65, first read in the Senate on January 22, 1945:

"An Act relating to elections in first class cities having a population in excess of 120,000 and not greater than 150,000, *as shown by the most recent census of the United States,* and repealing inconsistent acts.

"*Be it enacted by the Legislature of the State of Washington:*

"Section 1. Candidates for office in cities of the first class having a population in excess of one hundred twenty thousand (120,000) and not greater than one hundred fifty thousand (150,000), *as shown by the most recent census of the United States,* shall be nominated at primary elections to be held in such cities on the second Tuesday in February preceding the general election at which such offices will be filled. . . ." (Italics ours.)

On the following February 1st, there was first read, in the House, house bill No. 206. It was an exact replica of senate bill No. 65, just quoted, with this exception: Instead of the words we have italicized in quoting the senate bill, the house bill contained the following, "as shown by the 1940 census

of the United States." The House added a proviso to the bill, and, as so supplemented, passed it on February 13th. The Senate then abandoned its own bill and passed the house bill on March 6th, and, upon receiving the approval of the governor, it became chapter 60, Laws of 1945.

It is, therefore, clear that the legislature, in enacting chapter 60, deliberately rejected the phrasing, "as shown by the most recent census of the United States," and substituted for it, "as shown by the 1940 census of the United States." We are requested to hold, by a process of construction, that the substituted phrase will, after 1950, mean, "as shown by the 1950 census," and after 1960, "as shown by the 1960 census," and so on. But that is precisely what the legislature rejected by enacting the house bill instead of the senate bill. The request amounts to asking the court to reverse the legislative choice and *enact* the senate bill. Although courts have frequently been accused of legislating, and no doubt sometimes justly, we venture to say that no court has ever gone to that length, or even approached it.

The judgment appealed from will be affirmed. No costs will be assessed in this court.

ALL CONCUR.