[No. 50629–9.   En Banc.   January 11, 1985.]

THE CITY OF SEATTLE, *Appellant,* v. THE STATE
OF WASHINGTON, ET AL, *Respondents.*

*Douglas N. Jewett, City Attorney,* and *Gordon F. Crandall, Assistant,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. McCartan, Assistant,* for respondent State.

*Edmund J. Wood,* for respondents Crawford, et al.

*Perkins, Coie, Stone, Olsen & Williams,* by *Charles C. Gordon* and *Bruce W. Williams,* for respondent Boeing Co.

DIMMICK, J.—This case concerns a constitutional challenge by the City of Seattle to two statutes governing the annexation of territory by municipalities. RCW 35.13.165 was challenged under the state and federal equal protection clauses. Both RCW 35.13.165 and RCW 36.93.180(10) were challenged as special legislation. The trial court dismissed the City's claims, holding that the statutes were not special legislation and that the City did not have standing to raise the equal protection claim. We reverse.

The City's claim arises out of its attempts to annex an unincorporated part of the South Park/Duwamish area. The approximately 1½–square–mile area proposed for annexation includes both residential and industrial/commercial property.

There is no dispute concerning the facts in this case. In January 1978 the City took initial steps toward annexing the South Park/Duwamish area, utilizing the annexation procedure provided for under RCW 35.13.015, which allowed for a resolution by the municipality, with final approval by vote of the residents in the area proposed for

annexation. However, that attempt to annex the area was abandoned after the 1979 Legislature passed RCW 36.93-.180(10), which required a boundary review board to provide

> reasonable assurance that the extension of municipal services and the additional payments to be made by the property owners of the area to be annexed in the form of taxes bear a reasonable relation to the value of the additional municipal services to be received.

Laws of 1979, 1st Ex. Sess., ch. 142, § 2 (amended 1981). This additional criterion applies only to annexations by cities with a population of over 400,000 and only when an annexation is initiated by city resolution. Seattle is the only city in the state with a population of over 400,000.

Fifteen voters in the South Park/Duwamish area then petitioned for annexation of the area utilizing the annexation procedure provided for under the then existing statute, RCW 35.13.020, which required signatures equal in number to 20 percent of those voting in the last election, with final approval by vote of the residents in the area proposed for annexation. The Seattle City Council approved the voters' petition and submitted the proposal to the King County Boundary Review Board in October 1980.

The 1980 attempt to annex the South Park/Duwamish area was also thwarted. The 1981 Legislature enacted RCW 35.13.165[1] which terminates annexation proceedings upon

---

[1] "At any time before the date is set for an annexation election under RCW 35.13.060 or 35.13.174, all further proceedings to annex shall be terminated upon the filing of verified declarations of termination signed by:

"(1) Owners of real property consisting of at least seventy–five percent of the assessed valuation in the area proposed to be annexed; or

"(2) Seventy–five percent of the owners of real property in the area proposed to be annexed.

"As used in this subsection, the term 'owner' shall include individuals and corporate owners. In determining who is a real property owner for purposes of this section, all owners of a single parcel shall be considered as one owner. No owner may be entitled to sign more than one declaration of termination.

"Following the termination of such proceedings, no other petition for annexation affecting any portion of the same property may be considered by any government body for a period of five years from the date of filing.

either of two methods of filing with the relevant boundary review board. The first method requires signatures of the individual or corporate owners of at least 75 percent of the real property (as determined by its assessed valuation) in the area proposed for annexation. The second method requires signatures of 75 percent of the real property owners in the area proposed for annexation. Either method in effect grants veto power on the basis of property ownership. In the same act the Legislature tightened the criterion in RCW 36.93.180(10) to require that additional taxes will "remain reasonably equal to the value of the additional municipal services to be received during a period of ten years following the effective date of the proposed annexation" for cities over 400,000.

On July 24, 1981, the City filed this suit, seeking a declaratory judgment that RCW 36.93.180(10) and RCW 35.13.165 are unconstitutional. While this suit was pending, the City issued a comprehensive plan for the area and held public hearings on the annexation.

On October 7, 1982, the annexation proposal came before the Board. On the same day, petitions signed by owners of more than 90 percent of the real property in the area proposed for annexation were filed opposing the annexation. On October 21, 1982, the Board determined that RCW 35.13.165 required that all annexation proceedings be terminated with the receipt of these petitions.

On cross motions for summary judgment in the City's action for declaratory relief, the trial court dismissed the City's suit. This appeal was certified for direct appeal by the Court of Appeals.

## STANDING

■ We initially address the City's standing to bring this suit. Const. art. 11, § 10 (amend. 40) specifically protects cities from special legislation. *Martin v. Tollefson*, 24 Wn.2d 211, 216–17, 163 P.2d 594 (1945). Thus, the interest

---

"The provisions of this section shall apply only to cities with a population greater than four hundred thousand." (Italics ours.) RCW 35.13.165.

asserted by the City in challenging RCW 36.93.180 and RCW 35.13.165 as special legislation falls directly within the zone of interests protected by Const. art. 11, § 10 (amend. 40). Respondents claim that the City lacks standing to raise this issue because it is a political subdivision of the State and therefore not an adverse party. We reject this argument. *See Seattle Sch. Dist. 1 v. State,* 90 Wn.2d 476, 490, 585 P.2d 71 (1978). The City has standing to challenge a state statute as special legislation.

Respondents also argue that the City does not have standing to challenge RCW 35.13.165 on the basis of the state and federal equal protection clauses because these constitutional protections extend to individuals, not to the City. We disagree.

■ Standing is not an insurmountable barrier to municipal corporations challenging the constitutionality of a legislative act. *Seattle Sch. Dist. 1,* at 493. Where a controversy is of serious public importance the requirements for standing are applied more liberally. *Washington Natural Gas Co. v. PUD 1,* 77 Wn.2d 94, 96, 459 P.2d 633 (1969). The basic test for standing is "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question". *Seattle Sch. Dist. 1,* at 493 (citing *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 25 L. Ed. 2d 184, 90 S. Ct. 827 (1970)).

■ The City does not itself have rights under the equal protection clauses of the state and federal constitutions. The primary purpose of the equal protection clause is the protection of individuals' rights, including the right to vote. However, in cases involving the right to vote, the courts have also expressed a concern as to the effects of the denial of the right to vote on the integrity of the democratic process. *E.g., Reynolds v. Sims,* 377 U.S. 533, 555, 12 L. Ed. 2d 506, 84 S. Ct. 1362 (1964). Protection for the integrity of the political process, as well as individuals' rights, is within the zone of interests protected by the equal protection

clause. The City does have a direct interest in the fairness and constitutionality of the process by which it annexes territory.

In the past we have found standing to challenge a state statute for a public agency which was required to act under a statute which was arguably unconstitutional. *Snohomish Cy. Bd. of Equalization v. Department of Rev.*, 80 Wn.2d 262, 264, 493 P.2d 1012, *appeal dismissed*, 409 U.S. 810 (1972). We have also found standing for the Seattle School District to challenge unconstitutional action by the Legislature which placed financial constraints on the District's ability to meet the State's constitutional obligation to fund public education. *Seattle Sch. Dist. 1*, at 493-94.

If the City wishes to annex territory, it is constrained by the procedures established by the State. The fact that the City may choose not to annex territory does not diminish its interest in the fairness and constitutionality of the annexation procedures.

In addition, a party may have standing in either a personal or a representative capacity. *Vovos v. Grant*, 87 Wn.2d 697, 700, 555 P.2d 1343 (1976). It is undisputed that the residents of the area proposed for annexation would have standing to raise the equal protection claim. When the annexation process is initiated, residents of an area proposed for annexation become potential city residents. Once the City has initiated or approved an annexation petition, it has a duty to represent the interests of area residents, as well as its own interests in further proceedings. *E.g.*, RCW 35.13.173. Thus, the City has standing to raise the equal protection claims of its potential residents.

EQUAL PROTECTION

We next consider the validity of RCW 35.13.165, which allows the property owners in an area to block an election on annexation of the area by filing a petition opposing the annexation with the boundary review board. (See footnote 1 for entire text.) The City argues that this statute violates the equal protection clause of the state and federal consti-

tutions. We agree.

■ Municipalities are political subdivisions of the State and the State has wide discretion in establishing their boundaries. *Hunter v. Pittsburgh,* 207 U.S. 161, 178–79, 52 L. Ed. 151, 28 S. Ct. 40 (1907). Residents of a municipality have no constitutional right to vote on annexation decisions. *Hunter,* at 179. However, in exercising its authority over municipal boundaries, the State is subject to the limitations of the federal constitution. *Gomillion v. Lightfoot,* 364 U.S. 339, 5 L. Ed. 2d 110, 81 S. Ct. 125 (1960). In elections of general interest, the equal protection clause requires that any restrictions on the right to vote in that election, on grounds other than age, citizenship and residence, be allowed only if they promote a compelling state interest. *Hill v. Stone,* 421 U.S. 289, 44 L. Ed. 2d 172, 95 S. Ct. 1637, *reh'g denied,* 422 U.S. 1029 (1975). Similarly, any statute which infringes upon or burdens the right to vote is subject to strict scrutiny. *Williams v. Rhodes,* 393 U.S. 23, 31, 21 L. Ed. 2d 24, 89 S. Ct. 5 (1968); *Reynolds v. Sims,* 377 U.S. 533, 561–62, 12 L. Ed. 2d 506, 84 S. Ct. 1362 (1964).

Respondents correctly note that RCW 35.13.165 does not directly limit the right to vote in annexation elections to property owners. Rather, the statute gives property owners the power to prevent an election by filing a petition. Thus, our inquiry focuses on whether this petition procedure infringes upon or burdens residents' right to vote on annexation.

■ Respondents rely on numerous cases which approve statutory schemes granting property owners greater influence than other residents on the decision to annex their property. However, most of these cases involve challenges to statutory schemes which place the final decision on annexation in the hands of the governing board of the municipality rather than in the hands of the voters. Many of these statutes merely grant property owners the right to initiate the annexation procedure (*Berry v. Bourne,* 588 F.2d 422 (4th Cir. 1978); *Doenges v. Salt Lk. City,* 614 P.2d

1237 (Utah 1980); *Torres v. Capitan,* 92 N.M. 64, 582 P.2d 1277 (1978); *Jefferson v. West Carrollton,* 517 F. Supp. 417 (S.D. Ohio 1981)). These courts explicitly distinguish this type of statutory scheme from one in which the final decision on annexation is made in an election. *Berry,* at 424–25; *Doenges,* at 1239; *Torres,* at 69–70; *Jefferson,* at 420–21.

In cases in which the final decision on annexation was made in an election, the courts have not approved statutes which grant additional influence over the outcome to property owners. In *Mayor & Coun. v. Kelley,* 327 A.2d 748, 752–53 (Del. 1974), the Delaware Supreme Court found a statute which weighted votes in an annexation election by the amount of property owned by a voter to violate the equal protection clause. The court reasoned that the strict scrutiny standard was applicable when a state dilutes the right to vote, as well as when it totally withholds the right. In *Hayward v. Clay,* 573 F.2d 187 (4th Cir. 1978), the Fourth Circuit found invalid a statute which allowed rejection of annexation by the vote of property owners to override approval by the vote of all residents. Comparing the procedure to the dual election box procedure invalidated in *Hill v. Stone, supra,* the court focused on the effect of the statute, stating that

> The statutes of both states create property–based classifications of voters in an election of general interest and empower those with property to override the votes of those without. It is this restriction of the *effective franchise* to a property owning class—not the mechanics of accomplishing the restrictions—that offends the equal protection clause.

(Italics ours.) *Hayward,* at 190.

We find particularly persuasive the reasoning in *Curtis v. Board of Supervisors,* 7 Cal. 3d 942, 501 P.2d 537, 104 Cal. Rptr. 297 (1972). In *Curtis* the California Supreme Court held invalid a statute very similar to RCW 35.13.165. The California statute allowed 51 percent of property owners to block an election on the incorporation of a new city by filing a petition opposing incorporation. The California court

stated at page 955:

> We conclude that a statute which confers power to halt an election, and thus to prevent all qualified voters from casting their vote, must be considered to "touch upon" and to "burden" the right to vote, and therefore must be examined under the strict equal protection standards.

(Footnote omitted.) We likewise are persuaded that RCW 35.13.165 restricts the effective franchise and burdens the right to vote.

■■ Thus, RCW 35.13.165 is valid only if it is necessary to promote a compelling state interest. It is well settled that a state does not have a compelling state interest in granting greater voting rights on the basis of property ownership, even if the results of the election will affect property taxes. *Phoenix v. Kolodziejski,* 399 U.S. 204, 212, 26 L. Ed. 2d 523, 90 S. Ct. 1990 (1970); *Hill,* at 299. The only exception to this rule is for elections for limited purposes, such as water districts. *Salyer Land Co. v. Tulare Lk. Basin Water Storage Dist.,* 410 U.S. 719, 728–29, 35 L. Ed. 2d 659, 93 S. Ct. 1224 (1973). *Associated Enters., Inc. v. Toltec Watershed Imp. Dist.,* 410 U.S. 743, 35 L. Ed. 2d 675, 93 S. Ct. 1237 (1973).

The case before us involves a matter of substantial interest to all residents. Annexation will affect governmental services and regulation as well as property tax levels. In addition, property taxes, through their indirect effects on rents and the costs of local services, affect residents who do not own property as well as those who do. The State has not shown that it has a compelling interest in allowing property owners to block an election by all voters in an area on the issue of annexation. Therefore, RCW 35.13.165 is invalid.

■ Even if the federal equal protection clause did not require this result, we would find separate and independent grounds for our decision in our state constitution. Our interpretations of the state privileges and immunities clause have followed the federal interpretation of the equal protection clause. However, Const. art. 1, § 19 provides

additional protection for voting rights. It states:

> All Elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.

This provision does not require that "voters may go to the polls at any time and vote on any question they see fit . . .". *State v. Wilson*, 137 Wash. 125, 132, 241 P. 970, 43 A.L.R. 1263 (1925). However, it does require that otherwise qualified voters who are significantly affected by the results of an election be given an opportunity to vote in that election. *Foster v. Sunnyside Vly. Irrig. Dist.*, 102 Wn.2d 395, 403–11, 687 P.2d 841 (1984).

The effect of RCW 35.13.165 is to allow property owners to deny resident voters the opportunity to vote on annexation. We have allowed votes to be weighted on the basis of property ownership in special purpose districts which perform largely nongovernmental duties when the issue being voted upon disproportionately affects a definable class. *Foster*, at 410. That is not the case here. Annexation affects general governmental authority in an area. Nonproperty owners will be significantly affected by the decision. When the State has chosen to submit such an issue to a vote, the election must be "free and equal." The State may not restrict the vote to property owners either directly, through limitations on the right to vote, or indirectly, by giving a particular class the power to prevent an election.

### SPECIAL LEGISLATION

We next consider whether RCW 36.93.180(10) (requiring a reasonable relationship between taxes to be paid and services to be received in the area to be annexed) is invalid as special legislation because of its application only to cities of over 400,000. We need not discuss whether RCW 35.13-.165 is special legislation, even though we can find no rational basis for limiting its application to cities of over 400,000, since we have found this statute to be invalid under the state and federal equal protection clauses.

The Legislature's power to regulate the boundaries or

powers of cities is limited to the power to regulate by general legislation. Const. art. 11, § 10 (amend. 40). *See Martin v. Tollefson,* 24 Wn.2d 211, 215–17, 163 P.2d 594 (1945). Such constitutional limitations have been referred to as equal protection clauses for cities, preventing the Legislature from singling out particular cities for special treatment. Trautman, *Legislative Control of Municipal Corporations in Washington,* 38 Wash. L. Rev. 743, 758 (1963). Similar to the equal protection clause, the prohibition against special legislation does not prevent the Legislature from drawing appropriate classifications among cities. A law applicable to a class is a general law if the class is one "'requiring legislation peculiar to itself in the matter covered by the law.'" *Aetna Life Ins. Co. v. Washington Life & Disab. Ins. Guar. Ass'n,* 83 Wn.2d 523, 537, 520 P.2d 162 (1974).

The Legislature often distinguishes among cities on the basis of population. So long as population bears a rational relationship to the purpose and subject matter of the legislation, we will uphold the classification. *State ex rel. Lindsey v. Derbyshire,* 79 Wash. 227, 234–35, 140 P. 540 (1914). In evaluating a classification based on population this court will not examine the precise population lines drawn by the Legislature; rather we examine the use of population as the basis for classification in the act as a whole. *State ex rel. Vance v. Frater,* 84 Wash. 466, 468–69, 147 P. 25 (1915).

However, our analysis here differs somewhat from analysis under the equal protection clause. The Legislature may address a problem piecemeal without violating an individual's rights under the equal protection clause. *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 836, 601 P.2d 936 (1979), *appeal dismissed,* 446 U.S. 979 (1980). In contrast, the prohibition against special legislation focuses our inquiry on what has been excluded from the application of the statute.

"A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates

some persons, places or things from others upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes. *It is not, therefore, what a law includes that makes it special, but what it excludes. If nothing be excluded that should be contained the law is general. Within this distinction between a special and a general law the question in every case is whether any appropriate object is excluded to which the law, but for its limitations, would apply. If the only limitation contained in a law is a legitimate classification of its objects it is a general law.*

(Italics ours.) *YMCA v. Parish,* 89 Wash. 495, 498, 154 P. 785 (1916). Thus, to survive a challenge as special legislation, any exclusions from a statute's applicability, as well as the statute itself, must be rationally related to the purpose of the statute.

Many of the statutes which apply only to municipalities with particular populations delegate governmental powers to those cities. *E.g.,* RCW Title 35 (delegation of powers to first, second, third and fourth class municipalities); RCW 35.20.010 (municipal courts established in cities of over 400,000); RCW 3.46.050 (provision for election of municipal court judges in cities of over 400,000). In this situation, population serves as a rational means of determining which cities have the resources to properly exercise such authority. *E.g., State ex rel. Hunt v. Tausick,* 64 Wash. 69, 116 P. 651 (1911) (cities with a population of 20,000 to 25,000 may adopt the commission form of government). Other statutes which differentiate on the basis of a municipality's population determine the type or level of services a municipality is required to provide. *E.g.,* RCW 3.12.071 (justices of the peace in cities of 5,000 or more must be attorneys); RCW 3.58.010 (salary for municipal court judge may equal salary for superior court judge in cities of over 400,000). The relationship between population and the level of necessary municipal services is usually clear. *E.g.,* the purpose of the statute is also clear in the following cases: *In re Bartz,* 47 Wn.2d 161, 168, 287 P.2d 119 (1955) (requirement that a

justice of the peace in cities over 5,000 must be an attorney reflects limited availability of attorneys and fewer cases in rural communities); *State ex rel. Vance v. Frater, supra* at 468–69 (reasonable basis for requiring employment of an official court stenographer in smaller counties, but excluding their appointment in larger counties which have a pool of competent private stenographers from which to draw); *State ex rel. Lindsey v. Derbyshire, supra* at 235–36 (the comparatively light amount of litigation in the smallest judicial districts justifies their exclusion from a system of fee payment to cover costs of employing an official court reporter).

Here, the statute has a different purpose. RCW 36.93.180 directs the boundary review board to attempt to

(10) Provide reasonable assurance that the extension of municipal services and the additional payments to be made by the property owners of the area to be annexed in the form of taxes will remain reasonably equal to the value of the additional municipal services to be received during a period of ten years following the effective date of the proposed annexation. This objective shall apply only to cities with a population of 400,000 or more which initiates a resolution for annexation proceedings.

Its purpose is to protect individual property owners from annexations which increase the annexing city's tax revenues, but do not require comparable expenditures by the city for services to the area. This may be an admirable objective; however, we find no rational basis for limiting the application of such a statute on the basis of the annexing city's population.

The danger which the Legislature seeks to avoid is related to the type of property which is being annexed, not to the size of the annexing city. Areas which are primarily commercial or industrial property will generally yield higher tax revenues and require fewer municipal services than do residential areas. Both large and small cities, acting in their financial self–interest, will be more interested in annexing revenue producing territory than in annexing revenue draining territory.

Respondents argue that annexation by larger cities is a greater threat than annexation by smaller cities because of their higher tax rates and the greater financial pressure on these cities to expand their tax base. However, a review of property tax rates, the tax of most concern to property owners, indicates that the rates do not vary in proportion to the population of the assessing city. Nor do property tax rates indicate that larger cities have reached the limits of acceptable taxation rates and therefore have a greater need to raise revenues by expanding their tax base rather than by increasing tax rates. While larger cities may have greater expenditures, they also have a broader tax base. Department of Revenue, *1983 Property Tax Collections and Levies Due in 1984,* at 41–49 (July 1984).

We have searched the legislative history of RCW 36.93-.180(10) in vain for any indication of a rational basis for the population based classification in this statute. While we were unable to find any indication of why the Legislature chose to differentiate between cities with a population of more or less than 400,000, we did find indications that this legislation was passed with this particular annexation in mind. House Journal, 46th Legislature (1979), at 1272. This reinforces our conviction that RCW 36.93.180(10) is special legislation and therefore invalid.

SEVERABILITY

Finally, we consider whether our holding that the clause limiting the application of RCW 36.93.180(10) to cities with a population of over 400,000 is special legislation invalidates the entire section or only the limitation. The test to determine whether separate provisions in a statute are severable is

> whether the constitutional and unconstitutional provisions are so connected . . . that it could not be believed that the legislature would have passed one without the other; or where the part eliminated is so intimately connected with the balance of the act as to make it useless to accomplish the purposes of the legislature.

*State ex rel. King Cy. v. State Tax Comm'n,* 174 Wash.

336, 339–40, 24 P.2d 1094 (1933).

██ ██ There is a severability clause applicable to RCW 36.93.180(10). Laws of 1981, ch. 332, § 11. A severability clause is often given great weight in determining the Legislature's intent to make different parts of a statute severable. *State v. Anderson*, 81 Wn.2d 234, 501 P.2d 184 (1972). However, here it is clear that the Legislature would never have passed RCW 36.93.180(10) without limiting its application to cities of over 400,000. First, the clause was written as a limitation.

> The general rule is that if such a proviso operates to limit the scope of the act in such a manner that by striking out the proviso the remainder of the statute would have a broader scope either as to subject or territory, then the whole act is invalid . . .

16 Am. Jur. 2d *Constitutional Law* § 271 (1979). Second, the Senate defeated an amendment which would have made RCW 36.93.180(10) applicable to all cities. Senate Journal, 46th Legislature (1979), at 1592. Third, the elimination of the limitation would transform a narrow statute, applicable to one city in the state, into a wide reaching statute, affecting every annexation in the state. Under these circumstances we conclude that the limitation of RCW 36.93-.180(10) to cities of over 400,000 people is not severable from the rest of the provision and the whole of subsection (10) is invalid.

SUMMARY

In sum, we hold that the City has standing to raise all issues in this suit, RCW 35.13.165 is invalid as an infringement on the right to vote and RCW 36.93.180(10) is invalid as special legislation. The King County Boundary Review Board has jurisdiction to resume its review of the South Park/Duwamish annexation.

WILLIAMS, C.J., UTTER, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DOLLIVER, J. (dissenting)—No great mystery underlies

this case. The City of Seattle is anxious to annex certain property which includes the main plant of the Boeing Company. An affidavit on behalf of the defendants indicates the City will reap $2 to $3 million more annually in revenue over services provided to the area proposed to be annexed. Having failed in attempting to persuade the Legislature of the unfairness of the statutory requirements for annexation, the City has changed its venue and now calls upon the courts to hold the legislation unconstitutional.

In its recital of facts, the majority neglects to mention that owners of property exceeding 98 percent of the assessed valuation in the area filed a petition opposing annexation and that approximately 83 percent of the registered voters in the area submitted petitions asking that the annexation be terminated. No property owner or voter within the area proposed to be annexed has joined the City in this suit.

On the question of standing, I concur with the trial court and with the majority that plaintiff has standing to question the issue of special legislative aspects of RCW 35.13-.165 and RCW 36.93.180(10) which limit the application of those statutes to cities of over 400,000 in population. I also concur with the trial court but disagree with the majority on whether plaintiff has standing to raise the issue that RCW 35.13.165 denies equal protection of the laws to those voters who live within the area sought to be annexed.

The test for standing in this jurisdiction is twofold. A plaintiff must demonstrate *both* (1) that it has an interest that is "'arguably within the zone of interests to be protected or regulated by the statute or constitutional guarant[y] in question'" and (2) an "injury in fact". *Save a Valuable Env't v. Bothell*, 89 Wn.2d 862, 866, 576 P.2d 401 (1978); *Seattle Sch. Dist. 1 v. State*, 90 Wn.2d 476, 493, 585 P.2d 71 (1978). *See Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 152–53, 25 L. Ed. 2d 184, 90 S. Ct. 827 (1970). The City meets neither of these tests.

Plaintiff's entire argument that it meets the zone of interest test is as follows:

> [T]he City has an interest . . . in lawful procedures to enlarge its boundaries . . . [in the expenditure of] large amounts of money and effort . . . in responding to the voters' petition for annexation which will have been wasted if the unlawful termination petitions are allowed to prevail. In addition, the City's interest in logical service areas will be violated by a law which violates citizens' rights to vote. A city has a legitimate concern for planning its boundaries, and has standing to protect that concern from unconstitutional procedures.

(Citation omitted.) Brief of Appellant, at 40–41. While these are interests of the City, they are not the sort of interests protected by the equal protection clause. As defendant Boeing Company points out, the test is not whether the party merely has an interest in the litigation but whether the party has an interest which is protected by the particular constitutional provision allegedly violated.

Plaintiff may not attack the constitutionality of a statute unless harmed by the particular feature of the statute which is challenged. *State v. McCarter*, 91 Wn.2d 249, 253, 588 P.2d 745 (1978). Plaintiff is asserting what it claims are the constitutional rights of the residents of the proposed area of annexation. It is seeking to assert a right which it does not have against the residents who do have it in order to deprive the residents of their statutory authority to terminate the annexation proceeding. The City is attempting to assert the right of others who are not even within the jurisdiction of the City. If, in fact, the "right to vote" exists for the voters in the proposed annexation area, they are perfectly capable of exercising that right themselves. They have not chosen to do so. To allow the City standing to meddle in the affairs of the voters of the proposed annexed area, persons in no way within the jurisdiction of the City, would vitiate the requirements for standing established by this court.

Nowhere does the City show how the equal protection clauses of either the state or federal constitutions protect its interests in the expenditure of "large amounts of money", "lawful procedures", a "logical service boundary",

or "planning its boundaries". The majority cites *Seattle Sch. Dist. 1 v. State, supra,* to support its position on standing. That case, however, dealt with Const. art. 9, § 1, which provides it is the paramount duty of the State to provide an ample education. To comply with this provision, a school district must receive sufficient funding. We held the school district could demonstrate a zone of interest. In this case, however, there is no constitutional or statutory provision which gives rise to a zone of interest sufficient to confer standing in the City. The City has no duty to annex territory and no right of annexation except as permitted by the State. The power of the State over annexation is absolute. *Port of Tacoma v. Parosa,* 52 Wn.2d 181, 324 P.2d 438 (1958). Under RCW 35.13.174 the resident voters decide whether an area is to be annexed. Only those residents in the area proposed to be annexed can demonstrate a "zone of interest" necessary to confer standing to challenge the constitutionality of the annexation statutes.

The City also fails to meet the injury–in–fact test. In order to meet the test plaintiffs must allege "(a) a particularized injury (b) concretely and demonstrably resulting from defendants' action (c) which injury will be redressed by the remedy sought." *Stratman v. Watt,* 656 F.2d 1321, 1324 (9th Cir. 1981), *cert. dismissed,* 456 U.S. 901 (1982) (quoting *Bowker v. Morton,* 541 F.2d 1347, 1349 (9th Cir. 1976)). The City claims an injury in fact because it has spent money in its efforts to gain the annexation and has been unable to get it. The City, however, has not shown the alleged injuries resulted from action of the State or that the injuries would be corrected by the judicial remedies sought. The remedy sought would not require the area be annexed but only that an election be held among the residents of the area to be annexed. If these residents vote "no", the City would continue to suffer the exact injury of which it now complains.

Finally, the City is a political subdivision of the State. As was observed in *Mountlake Terrace v. Wilson,* 15 Wn. App. 392, 394, 549 P.2d 497 (1976):

The due process clause protects people from government; it does not protect the state from itself. Municipal corporations are political subdivisions of the state, created for exercising such governmental powers of the state as may be entrusted to them, and they may not assert the protection of the due process clause against action of the state government.

No more than did the plaintiff in *Hoppe v. King Cy.*, 95 Wn.2d 332, 337, 622 P.2d 845 (1980) have a "roving commission to bring [the] lawsuit" does plaintiff here have standing to bring this action unless it meets the standing requirements established by the court. It has not done so.

In addition to failing to establish standing, the City has failed to meet its burden of proof that RCW 35.13.165 and RCW 36.93.180(10) are special laws under Const. art. 11, § 10 (amend. 40). Statutes are presumed to be constitutional. *International Tracers of Am. v. Estate of Hard,* 89 Wn.2d 140, 148, 570 P.2d 131 (1977), *appeal dismissed,* 435 U.S. 1004 (1978). The unconstitutionality must be proved "beyond all reasonable doubt". *Aetna Life Ins. Co. v. Washington Life & Disab. Ins. Guar. Ass'n,* 83 Wn.2d 523, 528, 520 P.2d 162 (1974). The burden of proof rests with plaintiff, not the defendants. Where (1) the classification applies alike to all members within the class, (2) there is some basis for reasonably distinguishing between those within and without the designated class, and (3) the classification has a rational relationship to the purpose of the challenged statute, the statute will be upheld. *Equitable Shipyards, Inc. v. State,* 93 Wn.2d 465, 478, 611 P.2d 396 (1980).

The reason for this rule has been expressed by this court in *State v. Laitinen,* 77 Wn.2d 130, 132–33, 459 P.2d 789 (1969), *cert. denied,* 397 U.S. 1055 (1970):

Highlighting the issue here is the marked difference between the decision making processes of the judiciary and those of the legislative branch of the government under our constitutions. Whereas the judges must determine the facts from the evidence, avoiding personal predilections and opinions, come to a conclusion of ulti-

mate fact from the proof presented, and apply the law thereto regardless of personal animus, bias or feelings, the legislative branch of government under our constitution is free of such strictures. Legislators may well have been selected by the people not in spite of but because of openly declared opinions, prejudices and predilections. Unlike the judges, legislators need not base their decisions upon the weight of evidence, but may vote against the preponderance of it or vote upon a proposition without hearing any evidence whatever. In prescribing the police power, all that is constitutionally required of the legislature is that a state of facts can reasonably be conceived to exist which would justify the legislation. If the courts can reasonably conceive of such a state of facts, they must presume that such facts actually did exist and that the statute being tested was passed with reference to them.

The issue is whether the open–ended classification of cities over 400,000 is special legislation. Without exception, this court has upheld classification by population so long as the classification did not create a closed class, *i.e.*, a class which by definition could involve only certain cities at the time of the enactment of the statute and in the future. *E.g.*, where the city is actually named (*Denver v. Spokane Falls*, 7 Wash. 226, 34 P. 926 (1893); *Terry v. King Cy.*, 43 Wash. 61, 86 P. 210 (1906); *Miller v. Pasco*, 50 Wn.2d 229, 310 P.2d 863 (1957)) or population is otherwise closed ended (*Martin v. Tollefson*, 24 Wn.2d 211, 163 P.2d 594 (1945), which made certain primary election statutes applicable only to cities with a population between 100,000 and 150,000 "as shown by the 1940 census").

The classification here is open ended. By these terms both statutes will apply to any city which attains that population in the future and neither would apply to Seattle should its population fall below 400,000. An open–ended classification based on population has been consistently upheld by this court and has *never* been held to be special legislation. The 400,000 population criteria is not unusual. A number of statutes apply only to cities with populations of more than 400,000. *E.g.*, RCW 3.58.010—district court

judges paid as much as superior court judges; RCW 28A-.57.313—school directors serve 4-year terms; RCW 28A.57-.358, .425, .435—other special provisions for election of school director; RCW 35.21.780—state agencies expressly authorized to promulgate rules applicable exclusively to those cities; RCW 82.39.010—only cities over 400,000 may impose an excise tax on the sale or distribution of motor vehicle fuel and special fuel.

Even if the majority now chooses to ignore nearly 100 years of settled law and find open-ended classifications invalid, the City still has failed to meet its burden of proof. In its statement as to why the statutes are special legislation, the majority simply says it disagrees with the arguments made in support of the legislation. While these are interesting conclusions on the part of the majority, they have absolutely no relevance to the test for special legislation. The conclusions reached by the majority may be accurate; the test, however, is not whether the court agrees or disagrees with the reasons for the classification. Rather it is whether any state of facts could reasonably be conceived to sustain the classification.

> It is not the court's function to decide whether the statute is sound or unsound, wise or unwise, effectual or ineffectual—but only whether it is within the legislature's constitutional powers to enact it.

*State v. Laitinen, supra* at 133.

While the majority may choose to disagree, there are reasons and a rational basis for the statutes to apply to cities with a population of over 400,000. For example, large cities which offer more public services may be more likely to experience pressure for annexation; large cities are more likely than small cities to be surrounded by large property-owning industrial concerns which may be adversely affected by annexation; annexation to a large city often results in greater increased tax burdens than annexation to a smaller city. The City has not refuted the argument that in the matter of annexation large cities are different than small cities. The Legislature may choose to treat cities over

400,000 differently than smaller cities. Where it chooses to draw the line is a matter of legislative discretion, not the judgment of courts. *State ex rel. Lindsey v. Derbyshire,* 79 Wash. 227, 235, 140 P. 540 (1914). The City has not met its burden to prove beyond all reasonable doubt that treating large cities differently in annexation matters is unreasonable, inequitable, or unjust.

In its opinion, the majority arrogates to itself the prerogatives of the Legislature. While the court may disagree with legislative policies, it must remember its role is judicial not legislative. The trial court in finding the City had not sustained its burden stated it was "mindful of the separation of powers of the three branches of government". This is a sound position for this court as well.

Because of my views expressed on standing and on whether RCW 35.13.165 and RCW 36.93.180(10) are special legislation, it is not necessary to comment on the issues of severability or whether RCW 35.13.165 is a violation of the equal protection clauses of the federal and state constitutions.

In summary, I would hold: (1) Plaintiff has no standing to bring the action that RCW 35.13.165 is unconstitutional; and (2) neither RCW 35.13.165 nor RCW 36.93.180(10) are unconstitutional special legislation.

I would affirm the trial court and thus dissent.

BRACHTENBACH and ANDERSEN, JJ., concur with DOLLIVER, J.

Reconsideration denied April 12, 1985.